## HOBSON CHAMBERS *v.* COMMONWEALTH.

[Abstract Kentucky Law Reporter, Vol. 6—448.]

**Instructions to Conform to the Proof.**

The instructions given in a murder case must conform to the proof and if there is no evidence from which the jury could legitimately infer the existence of malice, an instruction should not have been given as to the effect of malice.

**Proof of Malice.**

Malice in a murder case must be proven like any other ingredient of the offense of murder and it is for the jury to say whether from the facts or a fair inference therefrom it existed in the bosom of the party taking the life of his fellowman, whether life is taken with

malice or in the absence of malice and in sudden heat and passion is with the jury and not the court.

## APPEAL FROM JEFFERSON CIRCUIT COURT.

### December 13, 1884.

OPINION BY JUDGE PRYOR:

The facts of this case conduce to show that the accused and a man by the name of Kyle were at a saloon at the corner of Ninth and Green streets. Kyle left the accused and went down Green street a short distance to where the deceased, Mulligan, Walsh and Grady were standing. Chambers in a short time followed Kyle, perhaps by Kyle's invitation and against his own wishes. It was but a short time after Chambers reached the place where Mulligan was, before Mulligan and Chambers were seen fighting. Chambers, the accused, had Mulligan down when Chambers who was on top exclaimed, "for Christ sake take him off, he is biting me. He is biting my thumb." They were separated and it appears that the deceased had bitten Chambers' thumb. Whether the parties were really separated or not does not distinctly appear and how or why the parties engaged in the fight is in no manner explained. After Chambers got up he ran, according to the testimony of some of the witnesses, and from the testimony of others walked rapidly up the street to the corner. Those who were present when the fight took place followed in the direction Chambers went, and Mulligan, the deceased, who had lost his hat in the difficulty followed up also, and approaching Chambers said to him, "Hop, give me my hat." Chambers said "go away." Mulligan snatched at his hat perhaps more than once. Chambers said to Mulligan, "you son-of-a-bitch, you bit me," and shot Mulligan. The latter was making no demonstration at the time he was shot, not even snatching for his hat, had no weapon, and gave the accused no reason to fear that he would use violence upon him.

The distance from where the fight took place to where Mulligan was shot was about fifty yards, and the interval between the fight and shot was but a few minutes. There is an attempt to show that Mulligan instead of grabbing for his hat struck Chambers, but the evidence is so slight of this fact as to be scarcely deserving consideration. The witness who first says that the deceased snatched for

his hat, then states that he either snatched at it or hit Chambers, and also says, that Mulligan came up and asked Chambers for his hat. Chambers went out on the street and Mulligan after him and Chambers came to the curbstone and Mulligan stepped back when Chambers said to him, "you son-of-a-bitch, you bit me," and pulled his pistol and shot him. This same witness says, that the deceased was doing nothing when he was shot, was unarmed and he heard Chambers say when they had the first fight "that when he got up he would shoot him." A witness by the name of Wesley states that Chambers in the first difficulty was knocked down by the deceased and deceased was on top of him but his narrative is contradicted by every other witness in the case. Chambers may not have followed Kyle for the purpose of having a difficulty and there is some proof conducing to show that he said "he wanted no trouble," but it is manifest that Chambers might have explained how or why the difficulty commenced by some of those present or they were all so much intoxicated as to be unable to recollect what did take place. It is manifest, however, from the testimony before us that the accused shot the deceased without any provocation. It is true his thumb had been bitten, but when he left the ground he had with him the hat of the deceased, and when asked for it seems to have avoided the deceased according to the testimony of his own witnesses, and was doubtless making up his mind as to whether he ought to shoot. The deceased was making no resistance and was not even the aggressor when the killing took place. He had no weapon and was calling Chambers by the familiar name of "Hop" and Chambers seeing that he had him in his power fired the fatal shot.

It is contended by the appellant's counsel that upon these facts there was no evidence from which the jury could have inferred malice and therefore the court erred in giving an instruction under which the jury returned a verdict of guilty as charged in the indictment. The rule is that the instructions given must conform to the proof and if there is no evidence from which the jury could legitimately infer the existence of malice the instruction should not have been given, we can not say that the deductions the jury were authorized to make from the evidence in that case required a verdict for a less punishment than that inflicted. The fact that the accused shot and killed deceased in sudden heat and passion does not reduce the offense from murder to manslaughter. If so, it would be sel-

dom that a conviction could be had for the higher offense. The fact of a sudden quarrel without any previous trouble between the parties and a shooting without any provocation other than mere angry words between them, will not reduce the offense, where the one kills the other, from a higher to a lesser degree of crime. While the court has said that malice must be proven like any other ingredient of the offense of murder, it is for the jury to say whether from the facts or a fair inference therefrom, malice existed in the bosom of the party taking the life of his fellowman. Whether it was done with malice or in the absence of malice and in sudden heat and passion is with the jury and not the court. The killing may be without provocation or with slight provocation and in sudden heat and passion, still it may be prompted by a malicious purpose, and the absence of provocation or the existence of slight provocation may authorize the jury to find the existence of malice.

This court has said that however slight the provocation the instruction for manslaughter should be given because the jury and not the court must say whether the killing was in malice or from sudden heat and passion. All the court can do is to give the instructions in regard to murder and manslaughter, ingredients constituting each offense, and when the killing is in sudden heat and passion but without provocation or slight provocation with a deadly weapon the crime is murder; still these are questions for the jury and can arise ordinarily for the trial court to determine on motion for a new trial. "If a man kill another suddenly, without any, or without a considerable provocation the law implies malice and the homicide is murder, but if the provocation is great the killing is manslaughter only." 1 Wharton American Criminal Law, page 971.

While this court has said malice must be established like any other fact, and that it is error to say to the jury that the law implies malice it is not meant to take from the jury the consideration of the facts attending the homicide in order to determine the question of malice. The want of provocation or slight provocation, the use of a deadly weapon such as a pistol or sword and the character of the fight, are all facts from which a jury may conclude that malice has been shown. In determining whether a killing upon provocation amounts to murder or manslaughter the instrument, says Wharton, with which the homicide was committed must be taken into consideration "for if with a deadly weapon the provocation must be great

indeed to lower the grade of the crime from murder." 1 Wharton American Criminal Law, page 971.

So if the legal question was presented alone upon the facts of this case the accused is guilty of murder, but being a question of fact and peculiarly within the province of the jury a verdict for manslaughter might have been returned but to say there is no evidence to authorize the verdict would not be warranted by the facts. Where two fight on equal terms and in the heat of passion, blows having passed, the one after an interval draws a weapon and kills the other, this Mr. Wharton says, is manslaughter. Here the parties had been engaged in actual combat, the one had bitten the thumb of the other; after they are separated and when there is no offer to renew the fight from the decided weight of the testimony, but the man killed is only asking for his hat, the accused who has the hat draws his pistol and kills him. It is with the jury to say whether it is murder or manslaughter. Here the accused, if the combat was mutual, entered into it with a deadly weapon giving him an unfair advantage, and a killing in such a case Wharton says, is murder.

We think therefore the court acted properly in giving the instruction in regard to murder, and also in telling the jury that if the accused without malice but in sudden heat and passion or in a sudden affray took the life of Mulligan and not in his necessary self-defense, it was manslaughter.

It is complained that the court failed to define "malice." If the definition had been given, the complaint on the part of the accused would have been of a more serious nature. The instructions were plain and intelligible and understood no doubt by the jury. In the third instruction in regard to self-defense the jury was told "that the accused was not bound to retreat but had the right to use such force as to him, in the exercise of a reasonable judgment, seemed necessary for his own protection," but added this qualification, "unless by his own wrongful act he made the harm or danger to himself necessary or excusable in said Mulligan." Of this qualification the accused complains. While the instruction in regard to self-defense should have been given, there was but little testimony to sustain, certainly none to sustain the qualifying part of it, than that intended for the benefit of the accused. The wording of the instruction really gave the defendant the benefit of a defense not sustained by the proof. We have read the record carefully and found nothing

palliating the offense or any error that could have prejudiced the substantial rights of the accused.

Judgment *affirmed.*

*P. W. Hardin, for appellee.*

*Chas. S. Grubbs, Kinney & Kinney, Willoughby Rodman, H. Clay, for appellant.*