## Allison v. Commonwealth.

(Decided October 20, 1922.)

### Appeal from Nicholas Circuit Court

1. Assault and Battery—Striking With Deadly Weapon.—One indicted under section 1166 of the statutes, for wilfully and maliciously striking another with a deadly weapon with the intent to kill him, may be convicted for the common law offense of assault and battery, since the latter offense is a lower degree of the former and is included in it, under the provisions of sections 262 and 263 of the Criminal Code of Practice.

2. Criminal Law—Witnesses—Province of Jury.—It is within the province of the jury to accept the testimony of one set of wit-

nesses and to reject that of another, and if done the verdict will not be set aside as palpably and flagrantly against the evidence, unless the rejected testimony so overwhelmingly preponderates over that which was accepted as to indicate that the action of the jury in accepting the latter was the result of passion and prejudice on its part.

3. Criminal Law—Evidence.—Evidence examined as set out in the opinion and, held, that the verdict is not palpably or flagrantly against the evidence and will not be set aside for that reason.

HOLMES & ROSS for appellant.

CHAS I. DAWSON, Attorney General, and THOS. B. McGREGOR, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The appellant, H. H. Allison, was indicted in the Nicholas circuit court and accused of the offense of maliciously striking and wounding another with a deadly weapon with the intention of killing him, which is one of the offenses denounced by section 1166 of the Kentucky Statutes. On his trial and under an instruction of the court permitting it the jury found him guilty of the common law offense of assault and battery and punished him with a fine of $500.00 and six months' imprisonment in the county jail. Judgment was pronounced upon the verdict and defendant's motion for a new trial was overruled and he has appealed, urging through his counsel two grounds for reversal (1), error in the instructions given by the court, and (2), that the punishment is excessive and is not sustained by the evidence and is flagrantly against it.

Before considering either of these grounds it might be appropriately stated that we have heretofore held that the common law offense of unlawfully assaulting another is a lower degree of the statutory one for which defendant was indicted, and under the provisions of sections 262 and 263 of the Criminal Code, if there was any supporting evidence, it would be the duty of the court upon a trial of an indictment for the statutory felony to submit to the jury the issue as to the defendant's guilt or innocence of the lesser crime. Lyon v. Commonwealth, 194 Ky. 570; Commonwealth v. Heath, 99 Ky. 182; Housman v. Commonwealth, 128 Ky. 818; Riggs v. Commonwealth, 17 Ky. L. R. 1015, and McWilliams v. Commonwealth, 18 Ky. L. R. 92. The court, therefore, very prop-

erly gave to the jury instruction number two on assault and battery.

The criticism of the instructions under ground (1), is wholly unfounded. It is contended that the language of the instructions is so couched "as to lead the jury to the conclusion that the appellant wilfully, maliciously, unlawfully and feloniously struck and wounded" the prosecuting witness, G. W. Kissick, but without copying them in this opinion we deem it sufficient to say that there is absolutely no room for the objection made to them. The first one authorized a conviction of the felony charge under the statute if the jury believed from the evidence beyond a reasonable doubt that the defendant wilfully, maliciously and feloniously struck the prosecuting witness with a rock or club or either, provided the jury believed that the instrument so used was reasonably calculated to produce death when used by a person of defendant's physical strength and in the manner in which he did use it, if the jury believed beyond a reasonable doubt he did so. Instruction number 2 on assault and battery authorized a conviction if the jury believed beyond a reasonable doubt that defendant unlawfully, wilfully and maliciously assaulted the prosecuting witness and beat and bruised him by striking him with a rock club, or either, but without intent to kill him. These isstructions conform to the law and the first ground urged for a reversal must be denied.

The disposition of ground (2), requires a brief statement of the evidence heard upon the trial. The offense was committed between eight and nine o'clock on the morning of October 14, 1921, in a corn field on the farm of defendant which was rented for that year by the prosecuting witness and he had cultivated it in corn and also grown some pumpkins therein. The corn had been cut and shocked but the pumpkins, or some of them, had not been gathered. The prosecuting witness and his practically grown son went into the field on the morning in question with a sack and a corn knife for the purpose, as they testified (and it is not denied), to gather a sack of small pumpkins, after which the father intended to finish cutting some corn which he had grown in an adjoining field. Prior to their entering the field to gather the pumpkins defendant and his grown son had gone into it for the purpose of sowing some rye, the father doing the sowing and the son harrowing it in. Kissick testified that while he and his son were gathering or about to begin gathering

the pumpkins defendant came near to him as he was sowing the rye and without a word or any act on the part of witness defendant said, "You old d—d son-of-a-b—, you will leave the farm," and started at him with a knife. Witness continued by saying: "I had my corn knife under my arm; his boy, Jack, came running up with a rail, and he said, 'Hold on, Jack, until I can cut some clubs,' and they went to the edge of the field and cut some clubs. We walked on and they followed me 20 shocks before I was knocked in the head. They came rushing up and said, 'throw up your hands.' Mr. Allison threw a rock at me and I dodged it, and as I raised back, he threw another rock at me which struck me on the left side of my face under the eye, and after he hit me, I didn't know anything more. After I hit the ground, I felt him hit me in the head, but I couldn't tell what with. After I hit the ground, I lost consciousness, and didn't know anything until after they had taken me to the hospital, and was taking the bones out of my head. I didn't know anything then only for a few minutes. It was two or three weeks before I fully regained my mental faculties." He said that while defendant and his son were getting the clubs and rocks down about the creek, which was nearby, that he and his son were going around the field in front of defendant and his son who came up from behind witness and committed the assault in the manner described. He stated that he was confined in a hospital for three weeks; that his skull was fractured, his face cut and lascerated and other physical injuries inflicted. His testimony in its entirety was corroborated by his son. It was proven by a physician that the inner and outer tables of the skull were fractured and that "The outer table of the bones was completely shattered, and all small fragments were removed. The inner table of the skull was fractured and the pieces left in that place;" that there was a wound underneath the eye extending from its inner corner "with considerable lascerations and contusions;" that the lower lid is drawn down and leaves the eyeball exposed and produces irritation, which may or may not prove dangerous to the eye by causing a chronic sore, but that in any event the situation was more liable to irritation than if the eye was in a normal condition.

Defendant in his testimony said that when Kissick came near him in the field he (defendant) said, "Kissick, if you have any business here, attend to it and get away

and don't bother me till I get this rye sown. I don't want to have any trouble with you." Whereupon Kissick said, "You have not a d—d bit of business in here. You get out of here and stay out of here until the first of March," when defendant replied, "I'll be d—d apt to," upon which Kissick retorted "You will, you d— son-of-a-b—." Up to that time Kissick was on his horse according to defendant, but that he immediately jumped off and drew his knife and applied to defendant another scurrilous and vulgar epithet, when defendant's son ran up with a club, but defendant pulled him away and said to him, "Let's get something we can defend ourselves with," whereupon the two went near to the creek and procured clubs and rocks, and while they were doing so Kissick and his son were abusing both of them. He stated that at about the time he and his son armed themselves in the manner stated Kissick.and his son had passed them and were in front, but defendant and his son followed them and as they approached defendant said, "You must retract what you called me," to which Kissick replied with the same scurrilous and vulgar remark and started towards defendant with the corn knife in his hand and defendant threw a rock at him but did not strike him. Defendant then continued his testimony by saying: "When I missed him with the rock, he still continued to advance on me with the corn knife in his hand, and I advanced towards him until I was within reach of him, and I struck him with the club I had, knocking him down. He got up with the corn knife still in his hand. I struck him again, knocking him down the second time. He got up again and as he got up again I struck him again knocking him down. My son was standing there close, as was Kissick's son, Earl, my son had the club in his hand that he had gotten down along the edge of the field. At this time, Earl Kissick ran up to my son with an open knife in his hand and attempted to cut him across the throat. I struck him and knocked him down, and G. W. Kissick got up again striking at me with the corn knife and cutting me on the thumb, and my son struck him and knocked him down. He did not get up any more while we were there." Defendant's son corroborated the testimony of his father as to how the difficulty happened.

The assault was committed on Monday and it appears that prior to that time there had been some misunderstanding between defendant and his tenant, Kissick, and

they had some kind of lawsuit on the Saturday before in which the latter was victorious. The Commonwealth offered to prove, but which the court erroneously, as we think, excluded, that defendant after that trial as well as after his examining trial stated that "he did not get justice in the court and he wasn't through with it. . If he could not get justice in the court, he would get it out of court." Testimony was also introduced by defendant, after laying the foundation therefor, that Kissick, before the difficulty for which defendant was indicted, went to a neighbor's to borrow a gun and said that "H. H. Allison had locked his gate and locked him out of his place, and if Allison came on the land, or in the barn he had rented, he was going to kill the son-of-a-b—." Similar threatening remarks by Earl Kissick, son of the prosecuting witness, were proven in the same manner. The defendant impeached the reputation of Kissick for peace and quietude by the testimony of some witnesses, but he sustained his reputation in that respect by about the same number of witnesses.

We have stated substantially all the testimony that was heard upon the trial and it is manifest therefrom that the second ground urged for a reversal can not be sustained under the oft repeated rule in this court that a verdict of conviction will not be set aside on the ground of insufficiency of the evidence to sustain the verdict, unless it is palpably and flagrantly against the evidence so as to induce the belief that it was the result of passion and prejudice on the part of the jury. Until the amendment in March, 1910, of section 281 of the Criminal Code of Practice, this objection to a verdict of conviction was not available on appeal by the defendant. Since then we have adopted the rule above stated which has been applied in a number of cases decided at the present term of court, two of which are Franklin v. Commonwealth, 195 Ky. 816, and Wells and Isaacs v. Commonwealth, idem 740. It is furthermore the rule, which this court has followed with equal consistency, that it is within the province of the jury to believe one set of witnesses and discard the other and that the verdict will not be regarded as flagrantly against the evidence alone from the fact of the jury having probably adopted that course, unless the testimony furnished by the apparently discarded witnesses so overwhelmingly preponderates over the testimony of the accepted ones as to render the verdict fla-

grantly and palpably against the evidence within the above stated rule.

Measured by these circumscribing rules it is perfectly clear to our minds that the ground now under consideration can not be sustained. Eliminating the admissions made by defendant in his testimony and that of his son and treating each of them as completely denying all elements of guilt, we then have a case in which two eye-witnesses testified for each side with one set contradicting the other. However, it is admitted by defendant and his son that the first provoking word was spoken by defendant and that he retired from the scene of the beginning of the difficulty and armed himself with clubs and rocks and then followed the prosecuting witness and renewed the assault by again accosting him with an angry demand. Under such circumstances the contention that the verdict is flagrantly against the evidence and is not sustained by it is utterly unfounded.

Wherefore the judgment is affirmed.