## Hall and Little v. Commonwealth.

### (Decided October 20, 1922.)

### Appeal from Floyd Circuit Court.

1. Criminal Law—Continuance.—It was not error, under the facts of this case as recited in the opinion, to overrule defendant's motion for a continuance on account of absent witnesses when their testimony as set out in the affidavit was read to the jury and the court instructed it to regard the testimony and give it the same weight as if the absent witnesses were present in court and testified thereto; but, if it were otherwise, the court properly overruled the motion for a continuance since the affidavit failed to show legal diligence to procure their attendance.

2. Criminal Law—Continuance.—It is not a sufficient manifestation of due diligence to procure the attendance of witnesses, on account of whose absence a continuance is sought, when the affidavit only alleged that defendant "had a summons for each of said witnesses and do not know why they are absent." It should further appear where the witnesses resided or might be found, and that process to that county had been issued and placed in the hands of the proper officer in time to procure service on them.

3. Criminal Law—Witnesses—Leading Questions.—It is not a reversible error that competent testimony was elicited by leading questions, unless, perhaps, the practice was so persistently indulged in as to make the suggestions of the attorney the testimony of the witness instead of his own statements.

4. Homicide—Self-Defense—Instructions.—An instruction on self-defense upon a trial for homicide is erroneous which does not state that defendant would have the right to defend himself, under the predicated circumstances, "even to the taking of the life of the deceased." Hence, where the instruction confines the right of self-defense to only shooting and wounding the deceased, the error might be sufficient to reverse a judgment of conviction; but where the jury are told that defendant, under the predicated circumstances, "had the right to use such force as was necessary, or as reasonably appeared to him to be necessary," etc., they are told in effect that defendant might kill the deceased in the exercise of his right of self-defense if it reasonably appeared to him to be necessary, in which case the failure of the instruction to strictly conform to the usual practice will not necessarily make the error a reversible one.

5.  Criminal Law—Argument of Counsel—Bill of Exceptions.—This court will not review complained of argument of counsel unless the objectionable remarks are made a part of the record by a bill of exceptions, and to incorporate the motion for a new trial in the bill of exceptions is not sufficient for that purpose, since all the effect that may be given to such unauthorized practice is to more thoroughly identify the motion and grounds, and it will not constitute a certification by the court of the truthfulness of the matters set forth in the grounds.

6.  Criminal Law—Review.—Section 281 of the Criminal Code of Practice forbids our reviewing the action of the trial court in empaneling the jury in criminal cases. Hence, we cannot consider the impropriety of a juror taking his seat in the panel and who was tested and accepted under the mistaken belief of himself and counsel for both sides that he had been summoned as a bystander, even if such facts would otherwise be available on appeal.

7.  Criminal Law—Evidence.—Where the evidence is contradictory and the jury believed one set of witnesses in preference to the other a verdict of conviction will not be set aside on the ground that it was flagrantly against the evidence, since it is the peculiar province of the jury to harmonize the contradictions and to return a verdict accordingly.

J. D. SMITH and B. M. JAMES for appellants.

CHAS I. DAWSON, Attorney General, and THOS. B. McGREGOR, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

Appellants, George Hall and Bruce Little, were jointly tried in the Floyd circuit court on an indictment charging them with wilfully murdering Richard Mosley. They were each convicted of the crime of voluntary manslaughter and given a sentence of six years' confinement in the state penitentiary. Their motion for a new trial was overruled and they have appealed, urging through their counsel as prejudicial errors committed by the court (1), refusal of the court to sustain their motion for a continuance; (2), the admission of incompetent evidence offered by the Commonwealth; (3), error in the instructions of the court; (4), improper argument of counsel for the Commonwealth; (5), the jury was improperly selected, and (6), that the verdict is against the evidence and is not sustained by it, each of which grounds will be considered in the order named.

1.  The motion for a continuance was based upon the absence of Joe Greer and Tom Hall, whose testimony was set out in the affidavit therefor, but it was not shown that

due and proper diligence had been used to obtain the attendance of the absent witnesses. The only effort to obtain their presence, as appears in the affidavit or other parts of the record, was "That they (defendants) have had a summons for each of said witnesses and do not know why they are absent." It was not shown where the absent witnesses resided nor to what county the process for their attendance was issued, nor that it was directed to that county, or was ever placed in the hands of any officer to execute, and if so how long before the trial. Clearly such a showing does not manifest the requisite diligence to procure the attendance of the witnesses. If, however, we were to put aside that objection, we would still be compelled to overrule this ground, since the testimony of the alleged absent witnesses was but cumulative with that of a number of others introduced by defendants and did not touch or bear upon any independent fact. The court permitted the affidavit to be read as the depositions of the witnesses and instructed the jury that it should be considered and given the same weight as if the witnesses were present in court testifying to the facts. It is quite manifest, therefore, that the court did not abuse a sound discretion in the course pursued, but on the contrary, for the reasons stated, gave defendants the benefit of testimony to which they failed to show themselves entitled.

2. The second ground relied on is so completely without merit that but little need be said in answer thereto. By far the larger portion of the testimony complained of was not objected to, and the basis of the complaint against all of it is that is was elicited by leading questions, which, if true, would not be a ground for reversal unless, perhaps, that method of examination was so extensively and artfully indulged in as to make the testimony not that of the witness but a recitation of the facts by the examining counsel. On the contrary, no such conditions appear and the questions complained of but remotely, if at all, violated the rule against leading questions, as will be seen by the subjoined ones, and answers thereto, propounded to some of the prosecuting witnesses by the Commonwealth's attorney. "Q. After he (deceased) went over to the bank there, railroad fill, and went on his back, tell the jury whether or not you saw him attempt to fire his pistol? A. No, sir, I did not. Q. What did you hear out there about the time George Hall left there? A. There was a shot fired out there just be-

low Gus Little's barn. Q. Was that in the direction of where George Hall went? A. Yes, sir. Q. Tom, tell what these defendants and Sol Johnson, and Hays Johnson, and Lafie Johnson, did out there? A. Well, I seen them all together, and they had guns thrown on my father.'' The other questions complained of are no more violative of the rules of proper examination and no more prejudicial to the interest of defendants than the ones we have inserted, and clearly this objection is so extremely technical as not to require further time or attention.

3. The principal complaint under this ground and the only one which may be considered as at all material, is directed to the self-defense instruction wherein the court failed to say that defendants had the right to *kill* the deceased if it reasonably appeared to them to be necessary to protect themselves or either of them from death or great bodily harm. After properly setting out the predicating facts which would justify defendants in exercising their right of self-defense, the instruction said, ''Then the court tells the jury that the defendants had the right to use *such force* as was necessary, or as reasonably appeared to them to be necessary, to ward off the then real, or to them or either of them apparent danger, but no more.'' The complaint is directed to the omission from the instruction of the phrase, or its substance ''even to the taking of the life of the deceased.'' The criticism of the instruction is technically correct, since it to be formally accurate should contain the last quoted clause or its substance; but, it does not follow that in every case the judgment should be reversed because it was not so stated in express terms. In other words, if the phraseology of the instruction, coupled with the testimony in the case, is such that the jury could not have been misled to the defendants' prejudice, the technical error will not be given the broad effect of working a reversal of the judgment. The case relied on as sustaining counsel's contention as to the fatal effect of the omission is Reynolds v. Commonwealth, 183 Ky. 375. In that case the complained of instruction was so worded as to require the jury to believe *beyond a reasonable doubt* the existence of the danger which would produce the right of self-defense, and for that reason it was held fatally defective and for which a reversal was ordered. The instruction also contained the omission herein complained of, since it expressly limited the right of defendant in the exercise of his right of self-defense to only *shooting and wounding*

the deceased. Because of that fact the instruction was criticised but a reversal was not expressly based upon that ground. Reference is made in that opinion to the case of Barker v. Commonwealth, 159 Ky. 309, as authority for the criticism therein made and now under consideration. In the latter case the judgment was reversed for other errors, but the opinion took occasion to admonish the court that upon another trial the self-defense instruction, instead of confining the right of defendant to only *shooting and wounding* the deceased, "should follow the usual language of such instruction which permits the defendant to shoot and kill his opponent under the circumstances predicated in the instruction," which, also, as will be seen, was not expressly stated as the ground for the reversal. But, whether so or not, it will be noticed that in each of them the language of the complained of instruction confined the right of the defendant only to the *shooting* and *wounding* of his antagonist in order to avert the danger about to be inflicted on him. In the instant case the instruction was not so restrictive of the rights of appellants, since it permitted them under the circumstances named therein to use *such* force "as was necessary, or as reasonably appeared to them to be necessary, to ward off the then real, or to them or either of them apparent danger," which evidently was broad enough to include the *killing* of the deceased by them if that was necessary, or reasonably appeared to them to be necessary, to save themselves from either the real or apparent danger. It will, therefore, be seen that there is a wide difference in the comprehensiveness of the language of the instruction in the two cases referred to and the one now being considered. The one in effect excluded from defendant the right to shoot and kill his antagonist, although it might be necessary to the complete protection of himself under his right of self-defense, while the other contains no such exclusion and by all fair and reasonable interpretation *includes* the right to kill as coming within "such force," etc. With this construction of the instruction, and in the light of the circumstances of the case as developed by the testimony, we do not think the substantial rights of the defendants were prejudiced because of the omission complained of.

4. The argument of prosecuting counsel, of which complaint is made under this ground, if unwarranted and prejudicial (but concerning which, to say the least of it, there is much doubt), can not be considered on this ap-

peal because it is only set forth in the motion and grounds for a new trial and is not made a part of the record by the bill of exceptions. Illinois Central R. R. Co. v. Evans, 170 Ky. 536; Chreste v. Louisville Ry. Co., 173 Ky. 486; Louisville Woolen Mills v. Kingden, by, etc., 191 Ky. 568, and Mayer v. Louisville Ry. C., 112 Ky. 371. It is true that the motion for a new trial, with all the grounds contained therein, is copied into the bill of evidence, but that fact is not a certification by the judge that what is contained therein actually occurred on the trial. It is only a certification of the true contents of the motion and grounds for a new trial and which practice is unauthorized and unnecessary. If a resort to such unnecessary practice could be given the effect of a certification by the court that everything contained in the motion was true, then the ground that the verdict was flagrantly against the evidence, or that the instructions were erroneous would be so certified by the court, as well as the truth of every other ground contained in the motion. So that, we conclude that the matters contained in the motion were not given any greater verity by inserting the motion in the bill of exceptions, which conclusion dispenses with the necessity for any further consideration of this ground.

5. Complaint made under this ground is that one Hyden, who was accepted on the jury, was not actually summoned by the sheriff when he was directed to fill the panel with bystanders, and that by some oversight or mistake the juror, who had not been summoned, took his seat upon the panel and was accepted and sworn and with the eleven others returned the verdict. We very much doubt whether the facts concerning the selection of the juror would constitute error either prejudicial or nonprejudicial, in view of the fact that he was accepted by defendants who had an opportunity to, and presumptively did, interrogate him and pass upon his qualifications and thereby waived all informality in the method by which he was called to sit in the case. But whether so or not, section 281 of the Criminal Code of Practice deprives us of the authority to review this alleged error, a practice which we have consistently observed and followed since the enactment of that section and which was not altered in this respect by the amendment thereto by the act of March 23, 1910. Two late cases so holding are Frasure v. Commonwealth, 180 Ky. 274, and Leadingham v. Com-

monwealth, 182 Ky. 291. This ground, therefore, must be overruled.

6. Under this ground it will be necessary to make a brief statement of the substantial facts developed by the evidence. The killing occurred on the late afternoon of Christmas day, 1921; Billy Johnson lived near the mouth of Little Beaver creek in Floyd county and on that day one of his daughters was to be married at his house about the noon hour; he lived near the creek just across which from his house was a railroad track which ran along the bank of the creek. About 200 yards above his house appellant, Bruce Little, lived with his father, mother, and other members of the family. Still above his residence Hays Johnson lived and further up the railroad and the creek appellant, George Hall, resided. In the forenoon of the day, as was the custom in the community, a large number of neighbors gathered at Billy Johnson's residence to be present at the wedding. Billy Johnson had two grown sons, Tom and Gus Johnson, and two sons-in-law, Grant Johnson and the deceased, Richard Mosley, all four of whom were in the crowd at the house. A short while before the wedding Hays Johnson, Sol Johnson, Lafie Johnson, the appellant, Bruce Little, and perhaps others with them, appeared but appellant, Hall, did not arrive until somewhere near one o'clock, he having stopped at Gus Little's on his way where he procured his dinner. In the meantime it is quite evident that at least the men folks at the house had imbibed quite freely of moonshine whiskey, so much so that Tom Johnson had out his knife and was engaged in waiving it around and making boasting and general threats whereby he sought to establish his reputation for bravery and general misconduct. He and Lafie Johnson got into a personal difficulty in the yard behind the smokehouse and some one became involved in a fight with the deceased, Richard Mosley, whereby he received a black eye. The evidence is somewhat confusing as to who actually engaged in the embroilments, but it is quite clear that most everyone there was a willing participant; the solemnity of the occasion and the sanctity of the day (Sunday and Christmas day) had no deterring effect. Eventually Tom Johnson procured a gun from a rack on the wall and was threatening to use it when he was overpowered and it was taken from him by his father, who by that time had also become belligerent, and appellant, Hall, with the assistance of others, took the gun away from him and went into the yard

where he broke it to pieces over a sled and a rock and then went across the creek on the railroad track and sat down. Part of the crowd joined him and some of them fired one or more shots. Appellant, Little, had left the place before the gun incident arose but he saw from his father's residence, appellant, Hall, break it as above stated. Within a short while Hall, and perhaps some of the other Johnsons; who were not members of the immediate family of Billy Johnson, started up the railroad, but not before Billy Johnson had some words with him about breaking the gun, which act on his part greatly incensed Billy Johnson, his two sons and his two sons-in-law. Billy and his son, Tom, went to Gus Little's and tried to borrow a gun, but they were unsuccessful and were importuned at that place not to follow appellant, Hall, and they were also informed that those so advising them would pay for the gun, but they expressed an unwillingness to accept pay since, as they expressed it, they wanted revenge. Billy Johnson returned to his house and sent his son Gus to the home of a man by the name of Newsom for the purpose of procuring firearms and within due time he returned with a gun and a pistol. In the meantime Grant Johnson and Tom Johnson had gone up the railroad in spite of the importunities from others not to do so and had arrived at Hays Johnson's residence where were also the appellants. The two Johnsons requested appellant, Hall, who had broken the gun, to go back with them to Billy Johnson's where they could procure more whiskey, but he declined to do so. In the meantime the deceased and Gus Johnson, after the latter had returned with the firearms, started up the railroad and they were also requested by those they passed and met to go back, which request they declined to heed. When they got to the house of Hays Johnson the two appellants were near the railroad some fifty yards beyond there, and the evidence is very conflicting as to how the difficulty resulting in decedent's death commenced. Everybody concedes that the deceased had a pistol in his coat pocket but not entirely concealed, and one prosecuting witness testified that appellant, Hall, fired the first shot which hit deceased and that the latter then drew his pistol when appellant, Little, also shot him. The majority of the Commonwealth's witnesses testified that Little first drew his pistol and Tom Johnson threw some rocks at him and then he became involved in a difficulty with deceased and shot him three or four times in the back while the parties were clinched, and

that deceased fell away from Little and rolled down the bank to the railroad dump near the edge of the creek when appellant, Hall, shot him in front and then went to him, after he was either dead or practically so, and beat him over the head with his pistol and then grabbed him by the hair and was about to throw him into the creek when he was prevented from doing so.

Defendants say, and they are supported by other witnesses, that deceased first accosted Little with some angry remarks and at the same time drew his pistol and shot Little twice, once in the thigh and once in the arm, whereupon the latter clinched him and with his right hand shot him in the back until he fell, as stated, but that he was not then fatally shot, and while on his knees he again drew his pistol and was about to shoot appellant, Hall, when the latter fired the shot with which he is charged. Defendants and some of their witnesses denied that Hall beat deceased with his pistol, or otherwise, or that he attempted to throw him or his body in the creek, although two of the most credible witnesses in the case and who were introduced by the defendants (Hays Johnson and his wife Dora Johnson), supported the testimony of the Commonwealth's witnesses as to how and under what circumstances appellant, Hall, fired his shot, although they could not see deceased, who was behind the railroad dump from them.

As is always true in such cases, it is almost impossible to get at the exact facts, but if the testimony introduced by the Commonwealth as to what occurred at the time of the shooting is to be believed there was abundant evidence to sustain the manslaughter conviction, for that testimony was to the effect that Little began shooting when he was in no danger and without any reasonable provocation; furthermore, that Hall fired his shot into the deceased after the latter was perhaps fatally shot by Little and without any provocation whatever. While there can be no doubt that the killing of the deceased was largely due to the conduct of Tom Johnson and that Billy Johnson and his sons and sons-in-law were greatly incensed at appellant, Hall, for breaking the gun, yet the testimony as a whole leads irresistibly to the conclusion that so far as the appellants were concerned ''Barkis is (was) willin';'' for we not only have the fact that appellants were drinking and armed, but the testimony shows that appellant, Hall, was himself engaged in conduct at the house of Billy Johnson which none but the braggart

would engage in. Not only so, but if the prosecuting witnesses are to be believed appellants displayed a ready willingness to use their pistols without legal justification. Of course, if the homicide was committed as testified to by appellants, with no contradictory or counter testimony, they were excusable upon the ground of acting in their necessary self-defense; but on the contrary, if it occurred as testified to by the prosecuting witnesses it was unjustifiable. It was within the peculiar province of the jury to reconcile the contradictions found in the testimony. They had the right to believe one set of witnesses as against the other, and unless the verdict was so flagrantly against the right of self-defense relied on by appellants as to indicate that it was the result of passion and prejudice on the part of the jury, we are not authorized to reverse it on this ground. Allison v. Commonwealth, 196 Ky. 140.

It, therefore, results that a careful consideration of the entire record reveals no error prejudicial to the substantial rights of appellants, and the judgment of conviction is affirmed.