## Saylor v. Commonwealth.

(Decided June 20, 1930.)

A. J. KIRK & SON, W. J. WARD and J. L. HERRINGTON **for** appellant.

J. W. CAMMACK, Attorney General, and HOWARD BLACK **for** appellee.

OPINION OF THE COURT BY JUDGE LOGAN—Affirming.

The appellant lives on Little Paint in Johnson county, a tributary to Green Rock fork of Jennis creek. He owned a farm on the other side of the hill on the Bev Williams branch, another tributary of Green Rock fork. On April 29, 1929, he and his two boys, one about nine and the other about twelve years of age, left his home on Little Paint and proceeded to his farm on the Bev Williams branch. He carried with him certain farm

tools and implements on a sled drawn by a mule. He passed a number of homes scattered up and down the creek and arrived at a field on the hill overlooking the Williams branch, and there he and the boys began to cut stalks and sprouts, preparing the ground for the plow. Awhile before noon he began the plowing, while the boys continued the cutting of the stalks.

Probably about 3 o'clock in the afternoon, Wallis Hanna and Lee Gibson came from the home of Hanna, who was a tenant of appellant, to the field where he was plowing. They had with them moonshine whisky in a glass jar and a jar of water. Appellant ceased his labors and stopped to talk with them. They invited him to drink of the whisky, but he at the time declined. There was some discussion about a school election approaching within a few days, at which election Lee Gibson was a candidate for membership on the school board. He was advised by appellant that he was not a voter in the district for which Gibson was standing for election. Trivial matters were discussed among them as they sat about on the hillside. About 4 o'clock Wayne Hanna, a brother of Wallis, came to the home of Wallis and inquired for him and Lee Gibson. He learned from Mrs. Wallis Hanna that she had seen them proceeding towards the field where appellant was at work. He rode his mule up on the hill and joined the three men. Within a few minutes thereafter Wallis Hanna left, taking his brother's mule, and he was gone less than thirty minutes before he returned. The two boys that were at work in the field were directed by their father to take the mule and go home. One of them took the mule home, while the other went to the home of Wallis Hanna, a neighbor, to remain overnight.

There is an interim of more than an hour without any evidence showing what happened, while the four men remained together on the hill, other than what is testified to by appellant himself and Wayne Hanna. About 6 o'clock Mrs. Cassie Gibson, with her son, Bernie, a boy about sixteen years of age, was seen going up the creek approaching the field where the men had been for some hours. About the time that she should have arrived on the scene, if she proceeded without stopping, shots were heard and a woman screamed. Six shots were fired in rapid succession; then there was a pause. Six more shots were fired rapidly and there was another pause. Thereafter four more shots were fired. In all sixteen

shots were heard, and there is no dispute in the evidence on this point.

The next thing we learn from the undisputed evidence is that two neighbors, living on the creek near the road usually traveled in going from Little Paint to the Bev Williams branch, testified that they saw appellant pass, and one of them testified that he had a pistol in his hand. About 9 o'clock that night Enoch Hanna, the father of the two Hanna boys, received information in some way that there had been a tragedy on the hill. He lived a mile or more away from the scene. He, probably accompanied by a Mr. Bailey, went up on the hill in the darkness and made some investigation, but found nothing at that time. Other inhabitants gathered, and Wayne Hanna was found in the brush at the lower side of the cleared land, shot through the lungs and apparently in a dying condition. He was rescued and taken to the home of some one living near by. The searching party with lanterns lighted returned to the hill for the purpose of searching more carefully. The night was dark, so dark, as expressed by some of the witnesses, that "a man could not see his hand before him." They found Wallis Hanna dead of many wounds inflicted by a pistol.

Later in the night they returned and found Cassie Gibson several feet further down the hill shot through the head, life extinct, and the body prone upon the ground. Still searching further, and hours later, they found Lee Gibson, also dead, as a result of gunshot wounds. The search was continued until about daylight, when Bernie Gibson, the boy, was found, also dead as a result of a gunshot wound. The body of Wallis Hanna was removed that night, but the bodies of the Gibsons were left until some time the next day.

It would take up too much space to detail all that transpired on that night among the searchers. The father of Wallis and Wayne Hanna searched through the night, as did the father of Cassie Gibson. Little was said, and there is a general impression left on the mind after reading the evidence that many things have not come to light; but the jury heard the evidence and convicted the appellant and fixed his punishment at eighteen years in the penitentiary.

Two eyewitnesses testified. Wayne Hanna told of the meeting with the others on the hill and the passing of the afternoon in friendly discourse. The whole transaction becomes more mysterious when it is disclosed by

the evidence offered by the commonwealth that there were no ill feelings then or at any time in the past between the Hannas and appellant or between the Gibsons and appellant. They had been friends and were relatives. Wayne Hanna testified that they left the hill and started down the path leading to the creek when they saw Cassie Gibson and Bernie Gibson approaching. Lee Gibson was talking in a loud voice when Wallis Hanna cautioned him not to talk so loud, fearing that he would disturb the family of Bev Williams. In response to this, appellant said that they were on his premises and could do what they pleased. He then heard Lee Gibson say, in effect, that he was not afraind of the pistol, or of a pistol, and although he was immediately in the company of the other three, he heard nothing said that threw any light on why the shooting took place. He testified that he saw appellant shoot Lee Gibson, and as the witness turned to run he saw a shot fired towards Wallis Hanna, and immediately thereafter he was shot in the back. He was so close to the man who shot him that his clothing was caught on fire by the discharge of the pistol. As he ran he became faint and finally fell in a clump of bushes and lost consciousness. He did not see Bernie Gibson, and Cassie Gibson was some distance away when the shooting commenced. According to his statement, he heard five or six shots fired.

Lee Gibson was under the influence of intoxicants, and so was Wallis Hanna and Wayne Hanna. While they were on the hill, Wayne testified that appellant said to him that he had procured Lee Gibson's pistol and that he exhibited a pistol to him while they were yet on top of the hill. When the body of Lee Gibson was found, he wore a pistol holster buckled around him but the holster was empty.

Mrs. Wallis Hanna was under the hill at her home milking when she heard the shots and the woman screaming. She testified that it was thirty minutes between the first and last shots. While she was milking, Bernie Gibson came over to a point of the hill where she could see him and called her, asking that she come up there at once as they were all being shot. She told him that she would not come, but did show enough interest to ask who was doing the killing, and he told her that the appellant was the slayer. He then withdrew out of her sight, and later she heard other shots. She made no effort to investigate

and did not know her husband had been killed for many hours thereafter.

Mitchell Blair and his wife, Ada Blair, testified that some weeks after the tragedy appellant was at their home with a pistol which formerly belonged to Lee Gibson in his possession and admitted that he had killed these persons.

In his own behalf appellant testified to the others coming to the place where he was at work. According to his version, Lee Gibson and Wayne Hanna became involved in a difficulty, and that he and Wallis Hanna kept them from engaging in a combat. It was soon after this that Wallis took the mule of his brother and left the hill, requesting appellant to remain and see to it that Lee Gibson did not hurt Wayne Hanna. He told his wife when he took the mule down to his home that he was going back to protect Wayne Hanna from harm at the hands of Lee Gibson. His wife so testified. When he returned to the hill, according to the testimony of appellant nothing happened until they saw Cassie Gibson approaching with her son, Bernie. They had not left the top of the hill and did not leave while appellant was there. Cassie came to where they were and asked her husband to go home. He refused. She pulled him to his feet, and Wallis Hanna pulled him back on the ground and said that he was not going home. Cassie then snatched from the holster of her husband his pistol and shot Wallis Hanna. As this was done appellant fled, according to his testimony, and ran across the hill and went home. He did not know what happened after he left. He denied that he saw either of the witnesses who testified that they saw him leaving soon after the shooting, and the one that said he saw the pistol is thoroughly contradicted by the facts which he stated himself, and by admissions that he made to others.

Appellant proved by many witnesses who were present at the time that he made no confession to Mitchell Blair and his wife. As he proceeded home after he fled he passed a number of homes without revealing what he had seen. But he did get word to some one on the creek that Cassie Gibson had shot Wallis Hanna. He did not return to aid in searching the hill. He gave as a reason that he heard that some one had said that he had something to do with the killing.

It is argued by counsel for appellant that the whole case was manufactured to conceal the guilty parties and

to place the crime on appellant. That may be true, but the evidence is for the jury to consider. We are mystified somewhat about the things that happened on that fatal night, but the jury was privileged to believe him or the other witnesses who testified against him. There is no merit in the contention that there was not sufficient evidence to take the case to the jury or to uphold the verdict. It is true that this court is authorized to reverse a judgment if it appears that the verdict is flagrantly against the evidence. Baker v. Commonwealth, 200 Ky. 294, 254 S. W. 887; Price v. Commonwealth, 221 Ky. 162, 298 S. W. 383. But this is not such a case. The evidence is conflicting, and in such cases we must follow the rule announced in the cases of Miller v. Commonwealth, 188 Ky. 435, 222 S. W. 96; Wilson v. Commonwealth, 208 Ky. 707, 271 S. W. 1055; Allison v. Commonwealth, 196 Ky. 140, 244 S. W. 422; Drake v. Commonwealth, 201 Ky. 604, 257 S. W. 1024.

It is complained of that the court admitted the evidence of Mrs. Wallis Hanna wherein she stated that Bernie Gibson called to her and advised her that appellant was killing all of them. This was sufficiently connected with the encounter to constitute a part of the res gestae and was therefore admissible. Howard v. Commonwealth, 227 Ky. 147, 12 S. W. (2d) 324; Louisville Ry. Co. v. Johnson, 131 Ky. 297, 115 S. W. 207, 20 L. R. A. (N. S.) 133.

It is complained of that the court refused to allow Rhoda Hitchcock to testify that Cassie Gibson came to her home a short while before the trouble and tried to make arrangements with her to provide a rendezvous for her with Wallis Hanna, saying at the time that she loved him as well as she loved Lee Gibson. That evidence was incompetent. It related to a matter which threw no light on this tragedy. There was no evidence tending to show that there was any ill feeling between Wallis Hanna and Lee Gibson, or that Lee Gibson had any knowledge of the love his wife had for Wallis Hanna, if in fact she made any such statement as attributed to her by Rhoda Hitchcock.

It is argued by counsel for appellant that the commonwealth's attorney was guilty of misconduct when he urged upon the jury in his argument that juries should write verdicts that would keep red-handed assassins from taking citizens out in the head of a hollow and take their

lives. The court admonished the jury not to consider this statement, and we cannot reverse cases unless the misconduct of the attorney arguing the case in the judgment of the court had some effect on the verdict.

Some complaint is made about the instructions, but similar instructions have been approved by this court many times. It is urged that the court should have extended the self-defense instruction so as to have allowed appellant to shoot in defense of others who were present. There is no basis for such a contention. Appellant did not rely on self-defense. His sole defense was that he was not there after the firing of the first shot and that he did not fire it.

There is complaint about the refusal of the trial court to grant a new trial because one of the jurors was related to some of the interested parties, but the trial court did not abuse his discretion in this respect.

Judgment affirmed.