## Sexton v. Commonwealth.

(Decided December 5, 1930.)

CHARLES FERGUSON for appellant.

J. W. CAMMACK, Attorney General, and HOWARD BLACK for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

The appellant, Frank Sexton, was convicted of altering a United States treasury note, a crime denounced by section 1193 of the Kentucky Statutes, and sentenced to serve two years in the penitentiary. On this appeal he seeks a reversal on several grounds which will be considered in the order in which they are discussed in the brief filed in his behalf.

The facts, briefly stated, are these: Appellant went to a store in Joy, Ky., operated by William Kepler, and asked Kepler to change a $5 bill. It was dark and Kepler was in the act of closing the store. The lights in the store were out, and Kepler with the aid of a flash-light counted the change and handed it to appellant, who gave Kepler a $5 bill which the latter placed in his pocket. Early the next morning G. T. Phillips, a blacksmith whose place of business was across the street from Kepler's store, came to the store and requested change for a $10 bill, and Kepler gave him the $5 bill which he had obtained from appellant on the previous evening. Within a few minutes Phillips discovered that the bill given to him by Kepler had been altered. The bill was a $1 treasury note, but the words "silver dollar" had been erased and a figure five had been pasted over the figure one on each corner of the bill. Phillips returned the bill to Kepler, who immediately called appellant on the telephone. Appellant went to the store, and when the bill was shown to him he informed Kepler that he had obtained it from James Downing on Saturday night and that he did not know it was an altered bill, but if Kepler was sure it was the same bill he had gotten from appellant on the day before, he would take it up, which he did when Kepler insisted that it was the same bill. James Downing testified that he changed a $10 bill for appellant on Saturday evening before the transaction with Kepler which occurred Monday evening, and that he gave appellant two $5 bills, but that neither of these bills had been altered. Downing was a clerk in his father's store at Carrsville, Ky.

It is first insisted that the demurrer to the indictment should have been sustained because (1) it is duplicitous, in that it charges that the appellant did unlawfully "erase and alter" a $1 bill, and (2) no such offense is denounced by the statutes. The accusative part of the indictment charges appellant with the crime

of unlawfully erasing and altering a United States treasury note. The body of the indictment is as follows:

"The said Sexton in the said County of Livingston on the —— day of —— 1930, and before the finding of this indictment did unlawfully erase and alter a one dollar bill. Money and currency legal tender note of the United States, but whether a United States Treasury Note or National Bank Currency is unknown to the Grand Jury, by erasing the one written and printed and stamped on said currency, and pasting and affixing the figure five over the figure where it appeared on said one dollar bill and changing and altering said one dollar bill from a one dollar bill to a five dollar bill."

Section 1193 of the Kentucky Statutes reads, in part:

"If any person shall forge, counterfeit or simulate any United States treasury or legal tender note, or any United States fractional or postal currency, or national bank currency, or shall erase or alter the same, . . . he shall be confined in the penitentiary not less than two nor more than ten years."

It is claimed the indictment is duplicitous because it charges appellant with both erasing and altering a United States treasury note, but here there were both erasures and alterations and both were necessary to accomplish the purpose of the perpetrator. The erasure was a part of the alteration and, under the circumstances, the commonwealth was not required to elect. The accusative part of the indictment refers to a United States treasury note, while the body of the indictment refers to a "one dollar bill," and since there is nothing in the statutes about altering or erasing a $1 bill, it is insisted that the indictment failed to charge an offense. However, the indictment proceeded to define the $1 bill as "money and currency legal tender note of the United States." The term "one dollar bill" ordinarily means lawful paper currency of the United States worth 100 cents, and the indictment as drawn contained a statement of the facts constituting the offense charged in such a manner as to enable a person of common understanding to know what was intended.

It is also contended that instruction No. 1 is erroneous, which directed the jury to find the appellant guilty if they believed beyond a reasonable doubt that he "did

unlawfully erase or alter a one dollar bill, being money or currency and a legal tender note of the United States, or National Bank currency, by erasing the 'one' written or printed or stamped on said currency or pasting and affixing the figure 'five' over the figure where it appeared on said one dollar bill and did change and alter said $1.00 bill from a one dollar bill to a five dollar bill.'' While the instruction used the phrase ''erase or alter'' and also the phrase ''change and alter'' this was not error, and the jury could not have been mislead in view of what we have said in regard to the sufficiency of the indictment.

It is also contended that the verdict is flagrantly against the weight of the evidence, since there is no evidence as to who altered the United States treasury note. The rule is that if there is any evidence which tends to show the commission by the accused of the crime for which he is on trial, the question of guilt or innocence should be submitted to the jury, and a verdict on competent evidence must be sustained unless it is so palpably against the evidence as to shock the conscience and compel the conclusion that the verdict resulted from passion and prejudice. The evidence showed that appellant had possession of the altered treasury note and obtained $5 in silver money in exchange for it. He presented it to Kepler just as the latter was closing his store, when it was dark and the alteration could not be readily detected. When he was later confronted with the bill that had been delivered to Kepler, he stated that he had obtained it on the Saturday night before from James Downing. The bill was returned to him but he did not make any complaint to Downing. While the evidence tending to show that appellant altered the bill is circumstantial, it was sufficient to take the case to the jury and to sustain the verdict. The circumstances were such as to authorize an inference by the jury that the alteration had been made by appellant.

It is finally contended that the trial court erred in permitting the commonwealth's attorney to ask leading questions. Some of the questions were leading in form, but most of them were as to points not material and, taken as a whole, were not prejudicial to appellant's substantial rights. The matter of allowing leading questions rests in the discretion of the trial court, and only where that discretion has been abused, resulting in a manifest miscarriage of justice, will a new trial be

granted. Blankenship v. Commonwealth, 234 Ky. 531, 28 S. W. (2d) 774; Hall v. Commonwealth, 196 Ky. 167, 244 S. W. 425. Ordinarily leading questions should not be asked, and where the essential facts of a case are developed by questions which suggest to the witness the answers desired, or which assume a fact to be proved which is not proved, the circumstances may be such as to warrant the granting of a new trial; but here the only questions to which appellant interposed objections were as to facts which had been theretofore developed by questions unobjectionable as to form. The objectionable questions merely suggested the reiteration by the witness of his answers previously elicited by proper questions.

The judgment is affirmed.