## Handshoe v. Commonwealth.

(Decided Sept. 27, 1932.)

JOHN W. CAUDILL and OSCAR P. BOND for appellant.

BAILEY P. WOOTTON, Attorney General, and FRANCIS M. BURKE, Assistant Attorney General, for the commonwealth.

OPINION OF THE COURT BY JUDGE RICHARDSON—Affirming.

For various reasons which are not necessary to be stated, Okie Fitch, Bill Fitch, Pearl Fitch, Irvine Co-

burn, Estill Robinson, and Elisha Robinson, were at the home of Wilse Handshoe on a Sabbath morning in November, 1930, on the head of Laurel fork of Quick Sand in Knott county, Ky. Soon after their arrival at his home, William Handshoe and Jim Shepherd, riding a mule, came to the home of Dave Handshoe. The Fitches, Robinsons, and Coburn left the home of Dave Handshoe, traveling a path leading from his home up the hill to the country road, where they sat down by the side of the road. William Handshoe and Jim Shepherd were at that time at the home of Dave Handshoe, talking with him, when Elisha Robinson remarked: "Over there is that yellow sheriff, Handshoe." Immediately either William Handshoe or S h e p h e r d turned the mule around and in the direction of Elisha Robinson and those sitting with him on the road. The parties who were sitting by the road started up the road, when William Handshoe said, "Wait up there boys, I will attend to you when I get up there." As William Handshoe and Shepherd were riding up the hill the mule was stopped, when Handshoe said, "Which one of you fellows was that talking about me up here?" Elisha Robinson responded, "By God it was me." At that time William Handshoe had his hand behind him, and as Elisha Robinson made the quoted remark, Handshoe brought his hand around with a pistol in it. When he did that Elisha Robinson stepped to the upper side of the road and picked up two rocks, a large and a small one; he threw down the smaller and broke the larger one in two, and made two rocks out of it. He then stepped down to the other side of the road and said to Handshoe, "God damn you, if you want to pull anything, come on." Thereupon Handshoe jumped off the mule and came around under its neck; as he did so he pointed his pistol toward Elisha Robinson, as if he was going to shoot. Bill Fitch was standing by the side of the road, and said, "Don't go to shooting, William, I will see that he don't hurt you," and began to hollo, "Drop that pistol." He holloed this three or four times. William Handshoe was holding his pistol toward Elisha Robinson's breast, going closer to Elisha Robinson, and about the fourth time Bill Fitch holloed, "Drop that pistol," Handshoe fired his pistol at Robinson. The shot seemed to knock Robinson around, or he voluntarily turned from Handshoe; the second shot hit him

over the hip, and the third shot hit him in the back, within about two inches of the backbone. The three bullets passed through the body, which caused his immediate death. Then William Handshoe turned his pistol from Elisha Robinson toward Bill Fitch, and shot at him one or two shots. Just about that time Fitch shot two or three shots at Handshoe, who fell. Fitch and Handshoe were about 20 or 25 feet apart, facing each other, when they were shooting. During the melee Estill Robinson, who was smoking a cigarette, was shot in the mouth and finger.

While William Handshoe was approaching Elisha Robinson as we have stated, Robinson made two or three steps in the direction of Handshoe, with a rock in each hand, his arms swinging by his side.

William Handshoe denied he had his pistol in his hand behind him at the time the mule turned and started up the hill. He claimed that he drew his pistol about the time he jumped off the mule; that he asked Robinson not to come down there with the rocks; that he stated to him that he wanted no trouble, and thereupon Robinson declared he was going to kill him; that he backed off around the hill when Bill Fitch holloed at him, "Drop that pistol or I will kill you," and that Fitch repeated this statement; that at that time Elisha Robinson turned and saw that Bill Fitch had his pistol drawn on him (William Handshoe), then he (Robinson) came right on toward him, with the rock drawn back in a position to throw it, when Bill Fitch holloed, "Don't you move," and fired his pistol at him; that he (William Handshoe) shot his pistol four times, three of the shots at Elisha Robinson and one at Bill Fitch; the last shot was fired at Bill Fitch.

The witnesses for the commonwealth claim that Bill Fitch did not engage in this encounter between Elisha Robinson and William Handshoe; that as soon as Handshoe shot and killed Elisha Robinson, he immediately turned and began to shoot at Bill Fitch, and then Fitch began to shoot at him. It will be observed from this resume of the evidence that it was conflicting.

On the trial of appellant the jury returned a verdict finding him guilty of voluntary manslaughter and fixed his punishment at confinement in the penitentiary for a period of twelve years. He prosecutes this ap-

peal, insisting that the verdict of the jury is flagrantly against the evidence. Other grounds were relied on in his motion and grounds for a new trial, but in his brief he only insists that the verdict "is palpably against the evidence and that it can be accounted for only on the ground of passion or prejudice."

It should be noted, according to the testimony of appellant, that at the time he shot and killed Robinson, Robinson was only assaulting him with a rock, while Bill Fitch was shooting at him with a more deadly weapon.

Accepting the theory of the witnesses for the commonwealth, Bill Fitch was not a participant in the combat until the appellant had shot and killed Robinson and then turned and shot at Fitch. It is perfectly apparent that both Elisha Robinson and the appellant, with alacrity and as a matter of choice, engaged in a mutual combat, and appellant entered into it with a deadly weapon, giving him an undue advantage. When his conduct is measured by the prevailing rule in such cases, his act, in so shooting and killing Robinson, was voluntary manslaughter, if not murder. Chambers v. Com., 6 Ky. Law Rep. 448. The appellant substantially concedes that there was some evidence authorizing his conviction, but insists that it was not sufficient to sustain the verdict of the jury. The rule is, where there is any evidence to sustain the verdict of the jury, this court will not disturb it. It is not the province of this court in criminal cases to pass on the facts other than to determine whether it is flagrantly against the evidence. Cornett v. Com., 156 Ky. 795, 162 S. W. 112; Miller v. Com., 236 Ky. 448, 33 S. W. (2d) 590; Neeley v. Com., 236 Ky. 74, 32 S. W. (2d) 552. In Bourne v. Com., 234 Ky. 842, 29 S. W. (2d) 561, it was stated that this court will not reverse a manslaughter conviction sustained by some evidence although against the preponderance of the evidence of self-defense. This court is warranted only in reversing a judgment in a criminal case where it is so shockingly against all the evidence as necessarily to show passion, prejudice, or other unpermissible controlling factors. Bourne v. Com., supra; Saylor v. Com., 235 Ky. 78, 29 S. W. (2d) 629; Manns v. Com., 235 Ky. 325, 31 S. W. (2d) 390; Bright v. Com., 235 Ky. 781, 32 S. W. (2d) 351; Sexton v. Com., 236 Ky. 354, 33 S. W. (2d) 28; Abdon v. Com., 237 Ky. 21, 34 S. W. (2d) 742. It is a familiar rule of

this court that the jury's finding on conflicting evidence is conclusive. Henderickson v. Com., 235 Ky. 462, 31 S. W. (2d) 712; Shepherd v. Com., 236 Ky. 290, 33 S. W. (2d) 4; Miller v. Com., 236 Ky. 448, 33 S. W. (2d) 590.

Applying these rules to the facts proven, we are not prepared to say that the evidence was insufficient to authorize and sustain the verdict of the jury. There is no basis for the contention that the verdict was the result of bias, passion, or prejudice.

No other grounds are relied on in the brief of appellant.

The judgment is affirmed.