## Collier v. Commonwealth.

(Decided October 16, 1914.)

### Appeal from Mercer Circuit Court.

1. Homicide—Instructions—Evidence.—In a prosecution for murder, the evidence showing the killing to be unprovoked and without excuse, the defendant himself admitting that without necessity or excuse he ran his hand into his pocket for his pistol, an instruction was authorized which told the jury in substance that defendant could not rely upon the ground of self-defense or apparent necessity if he armed himself with a deadly weapon, sought out the deceased, brought on the difficulty and willingly engaged in the same until the time he fired the shot that killed deceased.

2. Criminal Law—Mitigating Act—Trial—Instructions.—It was not error for the court not to give an instruction upon manslaughter, in view of the Act of 1914, the defendant's attorney refusing to agree to it, as under section 465 Ky. Statutes, the provisions of the mitigating act cannot be applied unless the parties agree that it may.

8. Criminal Law—Instructions.—The failure to define the terms "feloniously" and "malice aforethought" is not prejudicial error.

ROBERT HARDING, E. M. HARDIN and CHAS. CORN for appellant.

JAMES GARNETT, Attorney General, OVERTON S. HOGAN, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE TURNER—Affirming.

Appellant was indicted in the Mercer Circuit Court charged with the murder of Verdie Bowling, and upon his trial was found guilty and given a life sentence.

It appears that in December, 1913, there was a sale at a farm house some distance from the county seat at which a large number of persons were present; that appellant and deceased were among the crowd, and each went there more or less under the influence of liquor; that appellant, previous to the difficulty, exhibited his pistol, jostled numerous persons in the crowd, and otherwise conducted himself in an unseemly way. After having been there some time, and having made several purchases at the sale, he proceeded to the barn near where the sale was being conducted, and there came upon the deceased, Bowling, and one Teater, each of whom was in a maudlin state of intoxication, one having his hands upon the shoulders of the other, and one having his arms

around the other, and each professing their friendship for the other.

From this point on the testimony is very conflicting. One witness for the Commonwealth, who was shown to have been sober, states that he was standing in the barn door some three or four feet from the appellant, who was eight or ten feet from the deceased when the shot was fired; that deceased said to Teater, in substance, that "he was as good a man as he used to be," whereupon appellant said, "damn you, you are not as good a man as you think you are," and immediately drew his pistol and fired, and that appellant was at the time eight or ten feet from the deceased, and that no conversation had taken place between them prior to the shot, and there had been no effort upon the part of deceased to cut appellant although he had in his hand a pocket knife; that appellant was standing there with his hand in his pocket before the difficulty began. The witness, Dave Teater, who was with the deceased and both of whom were drunk, testified that he and Bowling were standing there when appellant came up; that appellant took hold of Bowling's shoulders and jerked him around, and they then took hold of each other and he separated them; that deceased had a knife in his hand and had before Collier came, and that Collier reached for his hip-pocket, and they got together again and he again separated them; that deceased drew back his hand and Collier drew his pistol and shot; that when Collier jerked Bowling around he said: "You are not as game as you think you are," and Bowling said: "I am not talking to you—I am talking to Dave." This witness is a first cousin of appellant, and testified on cross-examination that when Collier took hold of Bowling's shoulder Bowling had not said a word to him.

Some features of Teater's testimony tending to show that there was an altercation between the men previous to the shooting are corroborated by other testimony.

Appellant testified in substance that he went to the barn and entered at one door and went out at the door near where Teater and Bowling were standing, and that he walked up to them and said: "Hello, boys," and that Bowling looked up and said, "Turner, damn your soul—not one thing I have against you," and pulled out his knife and took hold of appellant's shoulder; that he got hold of him again presently and cut him on the cheek with the knife, and then he knocked his hand loose from his shoulder and shot him. This evidence of the defend-

ant is corroborated to the extent that Bowling is shown to have had a knife, and several witnesses testified as to having observed a cut or scratch upon appellant's face, although, as to the latter, there is a sharp conflict in the testimony, several witnesses stating that they saw no such thing, among them the officer who drove to town in the same buggy with him immediately afterwards.

The first error complained of is in giving of instruction No. 5, wherein the jury was told in substance that if the defendant, armed with a deadly weapon, sought out the deceased for the purpose of killing him or inflicting upon him great bodily harm, and with the intention of bringing on a difficulty and for the said purpose made a demonstration as if to draw a weapon upon deceased, and thereby brought on the difficulty and willingly engaged in the same up to the time he fired the shot that killed deceased, defendant could not rely upon self-defense and apparent necessity, unless they further believed that he in good faith abandoned such intention and withdrew in good faith from the conflict.

It is earnestly insisted for appellant that there is no evidence upon which to base such an instruction, but in this we can not concur. The evidence is that the defendant went to the sale drunk with a pistol in his pocket; that he exhibited the pistol to two or three persons while he was at the sale and a short time before the difficulty, and while within a few feet of the deceased had his hand in his hip pocket; and that while the difficulty was in progress and before even, under his own statement of the case, there was necessity or excuse for it, he ran his hand in his hip pocket as if to draw a weapon. Surely from this evidence the jury was authorized in reaching the conclusion that he purposely brought on the difficulty.

It is also insisted that it was error for the lower court not to instruct, in the manslaughter instruction, under the law as it existed at the time of the trial under the act of 1914, wherein it is provided that if the jury finds the defendant guilty they shall fix an indeterminate sentence and judgment of imprisonment in the penitentiary for an indefinite term, stating in the verdict the maximum and minimum sentence. Inasmuch as the verdict in this case was for murder, ordinarily, even if the position of appellant was correct, this could not have been prejudicial; but it is insisted here that the record shows that if the manslaughter instruction had been so

drawn the appellant would have been found guilty of manslaughter only.

It appears from the record that after the jury had been considering the case for some time they appeared in court and one of them inquired of the court if the jury had a right to find a verdict of manslaughter and fix the number of years the defendant shall be confined in the penitentiary, whereupon the court replied, "If the attorneys will agree to it I will," when the defendant's attorney refused to agree, and the court then told the jury to return a verdict under the instructions already given.

The killing in this case occurred before the act of 1914 was enacted, but the trial occurred after that act had gone into effect. This precise question has very recently been passed upon by this court in case of Coleman v. Commonwealth, 160 Ky., 87, and, indeed, previous thereto in Cockrell v. Commonwealth, 115 Ky., 296.

Where an act mitigating an offense goes into effect after the offense is committed, and before the trial, if the parties consent, the trial court may give the defendant the benefit of the new act; but in this case there was not only no consent, but the defendant actually objected when the court presumably started to give him the benefit of the new act.

It is further insisted that the failure of the court to define in the instructions the technical terms "feloniously" and "malice aforethought" was prejudicial; but it has been so often held that the failure to define "feloniously" is not prejudicial error we deem it unnecessary to go into that question. As to the question of defining "malice aforethought" the authorities, while not so numerous, are equally as decisive.

The appellant relies upon the case of Jolly v. Comminwealth, 22 K. L. R., 622, wherein the court gave a definition of malice aforethought, and directed it to be given upon another trial; but the judgment in that case was reversed for another and entirely different reason, and it was not indicated in the opinion that the failure to define malice aforethought would be a reversible error. Construing the opinion in that case this court in a later opinion in Hathaway v. Commonwealth, 26 Ky. L. R., 630, said:

"There can be no doubt that the definitions given in the case cited are sound and proper, but we fail to see how the accused has been prejudiced by their omission

in this case. As very correctly said in the brief, malice in the lay mind signifies personal hatred or ill-will, and doubtless many jurors so understand its meaning; it is, therefore, much to the interest of the Commonwealth that the jury should be told that "malice" in the instruction is used in its technical sense, and denotes a wrongful act done intentionally, without just cause, and that aforethought means a predetermination to do the act, however sudden or recently formed in the mind the resolution to do it has been made. An ardent Commonwealth's attorney would sincerely desire these definitions given in every murder case, but it would not be to the interest of the defendant so to do." See also Sampson v. Commonwealth, 26 K. L. R., 661.

We see no error prejudicial to the substantial rights of the appellant, and the judgment is affirmed.