## McGehee v. Commonwealth.

(Decided September 27, 1918.)

### Appeal from Todd Circuit Court.

1. Indictment and Information—Sufficiency.—It is no objection to an indictment charging two persons with murder by shooting with a pistol and cutting with a knife, that the particular acts constituting the offense were not severally charged against each de-

fendant, it being claimed that one of them did the shooting and the other the cutting.

2. Criminal Law—Continuance—Discretion of Court.—An application for a continuance is addressed to the sound discretion of the trial court, and its ruling upon such an application will not be disturbed, unless it be shown that the court abused its discretion in denying the application.

3. Criminal Law—Indictment for Murder—Submission to Jury.—Where two persons are jointly tried for murder and there is proof tending to show that both defendants were guilty, both cases should be submitted to the jury; and one of them having been acquitted and the other convicted, the latter cannot complain, upon appeal, that both cases were submitted to the jury.

4. Criminal Law—Instructions.—The instructions must be read together; and, if, when so taken, they present the whole law of a criminal case, no error is committed.

T. O. JONES and GEORGE S. WEATHERS for appellant.

CHARLES H. MORRIS, Attorney General, and HENRY F. TURNER, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Affirming.

On September 25th, 1916, Tom McGehee and Taylor McGehee, his grandson, were walking along the public road in front of the residences of Ben Harrison Wells and his son Richard Wells, near Kirkmansville. Tom McGehee was armed with a pistol and two bottles of "white lightning," from which he and his grandson, Taylor, had been partaking. According to the witnesses for the Commonwealth they were noisy, drunk and cursing; and Tom McGehee admits that when he was 150 yards from the house he shouted "whopee" a time or two, and shot at a sapling.

After they had passed the home of Ben Harrison Wells, they turned off the road, went through a gate and started across an old field that belonged to Ben Harrison Wells, and toward Taylor McGehee's residence. About that time Richard Wells remonstrated with the McGehees concerning their misconduct, saying they should not curse and blackguard along the highway in front of his house, or his father's house. This remark seemed to offend Taylor McGehee and he began cursing and abusing Richard Wells, and finally struck him, whereupon Richard Wells knocked Taylor McGehee down. While they were upon the ground Tom McGehee shot Richard Wells with a pistol. Richard Wells turned

and ran to the house, and having secured his shotgun returned to the scene of the fight and shot Tom McGehee in the shoulder. Richard Wells then fell dead from the pistol shot which he had received a few moments before. There was evidence to the effect that while Richard Wells and Taylor McGehee were upon the ground fighting, Taylor McGehee cut Richard Wells in the back with a knife, and after his death several heavy gashes or cuts were found across Richard Wells' back, under his shoulder blade. The following morning a barlow knife was found on the ground where the fight occurred. The foregoing is the story, in brief, as narrated by Ben Harrison Wells and his wife, Mrs. Martha Wells, the parents of Richard Wells, and eyewitnesses of the fight. Ben Harrison Wells says Taylor McGehee struck Richard Wells before Richard knocked him down, while Mrs. Martha Wells testified that Taylor McGehee struck Richard Wells twice before Richard knocked him down.

On the other hand, according to the story of the Mc-Gehees, Ben Harrison Wells and Richard Wells were the aggressors. The McGehees testified that when they were about fifty yards away Ben Harrison Wells began cursing and abusing them and told them to come out of his field, and that they returned to the road; that Tom Mc-Gehee tried to conciliate Ben Harrison Wells by offering him a drink of whiskey, which was refused; that before he could quiet Ben Harrison Wells Richard Wells came on the scene, knocked Taylor McGehee down and got on him and beat him after he was on the ground, and that while Taylor McGehee was on the ground Ben Harrison Wells kept Tom McGehee from separating them by threatening to shoot him with a shotgun. They further testified that when Richard Wells got up from beating Taylor McGehee, Ben Harrison Wells shot at Taylor McGehee; that Richard Wells then tried to take the shotgun from his father, and in the scuffle the gun was discharged while both had hold of it; that when Richard Wells finally secured possession of the gun he shot Tom McGehee in the shoulder with the remaining charge, reversed the gun and attempted to strike him with the butt of it; and that as he was advancing with the gun drawn to strike, Tom McGehee shot Richard Wells, killing him.

Tom and Taylor McGehee were jointly indicted for the murder of Richard Wells, and upon the trial Taylor

McGehee was acquitted, while Tom McGehee was found guilty of voluntary manslaughter and his punishment fixed at five years in the penitentiary.

Tom McGehee appeals, assigning as errors that the court erred (1) in overruling the demurrer to the indictment; (2) in refusing to grant him a continuance; (3) in refusing to peremptorily instruct the jury to find Taylor McGehee not guilty; and (4) in giving instruction, and in failing to correctly instruct the jury on the law of self-defense.

1. It is insisted that the demurrer to the indictment should have been sustained because the particular acts constituting the offense against each defendant were not severally set out as required in sections 122, 124 and 125 of the Criminal Code of Practice. The indictment is in the usual form and jointly charges the two McGehees with the murder of Richard Wells by shooting and wounding him with a pistol, and by cutting, stabbing and wounding him with a knife. The objection to the indictment is that the particular acts constituting the defense were not severally charged against each defendant, it being claimed that Tom did the shooting and Taylor the cutting. The objection is merely stated; is not argued in the brief at any length. We see no substantial ground for the objection. Appellant was charged as a principal, and the proof sustains the charge. Taylor McGehee was acquitted and is not complaining. In Commonwealth v. Lawson, 165 Ky. 4, where two defendants were jointly indicted for the crime of malicious shooting and wounding Walter Barrett with intent to kill him, the court held the indictment sufficient, saying:

"If Barrett had died within a year and a day from the date of the shooting, and if appellees had been jointly indicted for murder, it is plain no valid objection could have been urged against the joint indictment. Such a proceeding is often followed."

2. It is further contended that the trial court abused a sound discretion to the prejudice of appellant's substantial rights by refusing to grant to him a continuance in order that he might have an opportunity to procure the attendance of the witnesses, Mrs. Richard Wells, George Craft, A. A. Allison, Omer McGehee and Mrs. Lutie Wells. The rule is that an application for a continuance is addressed to the sound discretion of the trial

court, and its ruling upon such an application will not be disturbed, unless it be shown that the court abused its discretion in denying the application. Kelly v. Commonwealth, 165 Ky. 483; Brennon v. Commonwealth, 169 Ky. 818..

Mrs. Lutie Wells was the widow of Richard Wells, who was killed, and was a sister of Taylor McGehee; while Omer McGehee was related to the defendants. One of the principal issues upon the trial was whether the shotgun was fired before or after the pistol shots, and it is insisted that Mrs. Richard Wells, who resided nearby, would have testified that the shotgun was fired first; that it was impossible for anyone to have gone the distance from the gate to Ben Harrison Wells' house and back (about thirty-five or forty yards), in the period of time which intervened between the shots; and that Lutie Wells and Omer McGehee would have corroborated her. It will be remembered, however, that Richard Wells was killed on September 25th, 1916. The McGehees were indicted in December of that year and were tried on March 26th, 1918, precisely eighteen months after the killing, and after several terms of court had intervened. The affidavit as to what these absent witnesses would have testified to, if they had been present, was read as their depositions. Under the circumstances, it cannot be said that the trial court abused its discretion in refusing to further postpone the trial of the case.

3.   Counsel concede that Tom McGehee's case should have gone to the jury; but he insists that in refusing to peremptorily instruct the jury to find Taylor McGehee not guilty the court left the whole case to be decided by the jury, under joint instructions as to both shooting and killing, and cutting and killing. There is no substance in this complaint. There was proof that both defendants were responsible for Richard Wells' death, and that being true, the court properly submitted both cases to the jury.

4.   It is contended that instructions 1, 2, 3 and 6 were erroneous. The first instruction on wilful murder has been described as a conspiracy instruction, although there is no charge of conspiracy in the indictment. But the verdict of the jury shows upon its face that appellant was found guilty of voluntary manslaughter under the second instruction, which was a joint instruction appli-

cable to both defendants, or to either of them. It is insisted that the second instruction, being a joint instruction on voluntary manslaughter, should have specifically named each defendant and definitely confined his acts to shooting or cutting according to the proof. But this court has often said that two or more defendants could be jointly indicted for murder, and that whenever the indictment is joint either defendant may have a separate trial, if he desires it. In that event the instruction, of course, would relate only to the defendant on trial; but where two persons are jointly indicted and elect to be jointly tried, it is not error for the court to follow the indictment and the proof and give such instructions as would apply to both defendants. This was done in this case.

In Greenwell v. Commonwealth, 125 Ky. 192, several defendants were tried for murder, and the court gave instructions similar to the instructions given in this case. In that case the court said:

"As applied to the facts of the case, the instructions, though not well drawn, could not have misled the jury, and under the Code a judgment of conviction cannot be reversed unless upon the whole record it appears that the defendants' substantial rights were prejudiced."

The instructions in the case at bar are clearly drawn, and are not subject to the criticism made of the instructions given in the Greenwell case.

It is further insisted that the second instruction should have contained the qualifying clause that appellant could be guilty only in case he shot and killed Richard Wells not in his necessary or apparently necessary self-defense, or in the defense of his co-defendant. It is true this qualification is not found in the second instruction, but it is carefully given in the sixth instructon; and as the instructions must be read together, the appellant was not prejudiced.

It is further insisted that the sixth instruction should have given the appellant, naming him, the right to shoot in his or his co-defendant's defense, without adding the words "and kill," as set out in the instruction. The instructions give either defendant the right to shoot and kill in his own self-defense or in the defense of his co-defendant; and certainly the generality of the instruction could not have prejudiced appellant.

The instructions, as a whole, presented every phase of the case to the jury, and carefully preserved all of the appellant's rights.

Judgment affirmed.