## Whitson v. Commonwealth.

(Decided February 16, 1923.)

### Appeal from Fulton Circuit Court.

1. Criminal Law—Change of Venue—Discretion.—A sound discretion is lodged in a trial court under our statute in granting or refusing an application for change of venue; and while that discretion will be reviewed by this court upon appeal, the rule is that his action on such motion will not be deemed ground for reversal unless upon an examination of the whole record it is made to appear the trial court has abused that discretion.

2. Criminal Law—Change of Venue—Discretion.—Even if this court would have taken different action from the trial court, if sitting as such, still where there is in the record nothing upon which to rest a conclusion that the sound discretion of the trial court has been abused, its action will be upheld.

3. Criminal Law—Continuance—Absent Witnesses.—Where upon an application for a continuance by a defendant upon the ground of absent witnesses the Commonwealth agrees to admit the affidavit in evidence subject to relevancy and competency, and on the trial when defendant called for the affidavit it was lost and could not be produced, defendant is not on that ground entitled to have the trial stopped, it appearing he took no step to prepare and present a substituted affidavit, or any step whatever to get the benefit of the statements in the affidavit, or to cure or correct the misfortune brought about by its temporary loss.

4.  Criminal Law—Exclusion of Witnesses During Trial.—The provisions of the Code providing for the exclusion from the court room of witnesses during a trial are only directory, and it is within the discretion of the trial court to permit one witness to remain in court to aid attorneys in the presentation of the evidence.

5.  Criminal Law—Instructions—Defects.—A defect in an instruction in failing to require the jury to believe beyond a reasonable doubt that the killing was done with malice aforethought, was cured by subsequent instructions to the effect that defendant could be found guilty of willful murder only if the shooting was done with malice aforethought and other instructions on the subject of reasonable doubt, using the language of the Code.

6.  Criminal Law—Argument of Counsel.—The language complained of, used by the attorney for the Commonwealth in the closing argument, is considered and held not to be prejudicial error.

CROSSLAND & CROSSLAND and MOORE & STAHR for appellant.

CHAS. I. DAWSON, Attorney General, and THOS. B. McGREGOR, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY TURNER, COMMISSIONER—Affirming.

Appellant was indicted in the Fulton circuit court charged with the murder of Almos Taylor, and upon his trial was found guilty and a verdict of life imprisonment returned against him. His motion for a new trial was denied, judgment was entered on the verdict, and he has appealed.

He resided in what is known as the Madrid Bend of Fulton county, a remote section of that county about twenty miles from the county seat and separated from the remainder of the county by a bend in the Mississippi river. It appears in that section the illicit production and sale of spirituous liquors had been prevalent, and the sheriff of the county was active in his efforts to suppress this particular form of law breaking. In the prosecution of his efforts he found on appellant's premises a moonshine still and arrested him and took him to the county seat. While appellant was confined in the county jail under this charge the sheriff received information from some source that he would find upon investigation at a certain point near the outhouse on appellant's premises where the still had been operated, the dead body of a man there buried that appellant had killed. Acting upon that information the sheriff with several others made the investigation indicated and there found buried near the

outhouse and on appellant's premises not far from his house, the body of a dead negro, Almos Taylor. The body of the negro when exhumed disclosed about thirty buck shot wounds in the back.

This discovery resulted in the indictment of appellant, and the evidence for the Commonwealth by two eye-witnesses, corroborated by circumstances testified to by others, showed appellant had killed the negro about the 22nd day of December, 1921, by shooting him twice with an automatic shotgun. This evidence shows that the first shot did not kill the negro, and that between the first and second shots the negro in effect was begging for his life, and said to appellant "Mister Will, don't shoot me no more," and that thereafter the second shot was fired while the negro was in practically a helpless condition and wholly unable to defend himself.

The evidence of the defendant is that the negro was at the time advancing upon him, with his hand in his pocket like he was going to draw a pistol, when he shot first; and that the negro kept coming towards him when he shot him again. His testimony further is that earlier in the day the negro, who was drunk, had a quarrel with another man at appellant's home, and that appellant had prevented the other man from attacking or injuring the negro, and that such other person had thereafter left the premises; that after the departure of the other man he and the negro had gone to another part of appellant's farm for the purpose of looking at a tenant house which the negro thought of renting and occupying and that when they returned from this trip the negro, still drunk, continued to abuse the white man, who had gone, when appellant remonstrated with him for so doing, whereupon the negro applied to appellant a vile name and advanced on him as heretofore stated. This evidence of defendant is corroborated only to the extent that it is shown by the evidence of others there had been earlier in the day a difficulty between the negro and the other man.

Other evidence for the Commonwealth showed that appellant sought on that day to induce one man to haul the body of the negro in his wagon and throw it into the Mississippi river, but that he refused to do so; and it is further shown by two other witnesses that they, that night, under compulsion and by threats, were compelled by appellant to aid him in the burying of the body of the negro. They each testified the negro "grunted" or

"groaned" as they rolled him into the grave, indicating plainly he was still alive.

Although others are incidentally refered to, the following five grounds for reversal are chiefly relied upon: First, the court erred in denying appellant's motion for a change of venue; second, error in directing the trial to proceed when an affidavit for continuance, which it had been agreed by the attorney for the Commonwealth might be read as the depositions of the absent witnesses, appeared during the trial to have been mislaid and could not be found by the clerk when it was sought to be introduced in evidence by appellant; third, error of the court in permitting the sheriff, West, who was a witness for the Commonwealth and who was not acting as an officer of the court during the trial (a special bailiff having been appointed on appellant's motion), to remain in the court room and assist the attorneys for the Commonwealth during the trial; fourth, error in the instructions, and, fifth, misconduct of the attorney for the Commonwealth in the closing argument.

(1)   A sound discretion is lodged in the trial court under our statute (section 1109) in granting or refusing an application for a change of venue.   And while that discretion will be reviewed by this court upon appeal, the rule has been adopted that such action will not be deemed ground for reversal unless upon an examination of the whole record it is made to appear the trial court has abused that discretion.   McElwain v. Commonwealth, 146 Ky. 104; Heck v. Commonwealth, 163 Ky. 518; Wallace v. Commonwealth, 167 Ky. 277; McDonald v. Commonwealth, 177 Ky. 224.

In the McElwain case it was held in effect that even if this court would have taken different action from the trial court if the matter had been one of first impression, still where there is in the record nothing upon which to rest a conclusion that the sound discretion of the trial court had been abused, its action will be upheld.

In this case a large number of witnesses were introduced on the question.   Some of them expressed the opinion that appellant could not receive a fair trial in the county, while others were positive there was no such sentiment in the county as would prevent his receiving a fair and impartial trial.   Those who were of opinion that he could not receive such trial based their opinions largely upon the fact that the sheriff, West, through publications in the county papers and through the exhibition

of certain pictures that he had taken of the still found at appellant's home and of himself and other persons engaged in the capture, had aroused in the county such a sentiment against appellant as would prevent his having a fair trial. It does appear that great publicity was given to the capture of this and other stills in that neighborhood, and that after the discovery of the negro's body on appellant's place still greater publicity was given to that incident, and it appears by these publications, and otherwise, it had become rumored in the county that appellant had killed seven men, although the record fails to furnish any tangible thing upon which that rumor was based.

On the other had, it appeared that Fulton county was a very large county; that some sections of it were twenty miles or more from the county seat; that there was a large population, and in effect that the sentiment against appellant had not permeated the whole county to such an extent as to prevent the selection of a jury which would give him a fair and impartial trial.

There was shown a state of case which might, to one not on the ground and unfamiliar with the county and its population and the characteristics of its people, indicate there had been aroused against appellant such feeling as would entitle him to a change of venue. But when we take into consideration the positive statements of a number of witnesses that appellant could have a fair and impartial trial, and when we take into the estimate the fact that the trial judge was familiar with not only the witnesses who testified on this issue but presumably had a general acquaintance throughout the county, and was familiar with the nature and characteristics of its population, there is no such state of case presented as justifies this court in saying the trial court abused its discretion. This conclusion is strongly fortified by one thing disclosed by the record. The evidence for the Commonwealth shows this to have been a foul, brutal and indefensible assassination, and that evidence must have been believed by the jury or its verdict could not have been reached. That same jury, which we have seen believed the evidence of the witnesses for the Commonwealth, was authorized under its instructions either to inflict the death penalty or give the defendant a life sentence. Under the evidence a verdict of death would have been fully justified, and yet this jury gave the defendant the benefit of the lowest penalty it could have given him, believing as it

did the evidence of the Commonwealth. From this it is apparent at least the members of the jury trying the case had no such prejudice against him as prevented his having a fair and impartial trial.

Everything considered we are unwilling to say the trial court abused its discretion in refusing the change of venue.

(2) Before the trial was entered into defendant entered a motion for a continuance and filed in support of the motion his affidavit that certain named witnesses for him had been served with subpoenas but were absent; that certain of them lived in Lake county, Tennessee, near the Fulton county line but were frequently in Fulton county and were in the habit of coming to the county seat. He stated he could prove by each of those witnesses that they were well acquainted with defendant, knew his reputation among his neighbors and acquaintances for peace and that such reputation was good; also that they were acquainted with the general reputation of the Commonwealth's eye-witnesses, Barner and wife, for morality, truth and veracity and that such reputation was bad; and that they also knew the general reputation of the deceased, Almos Taylor, was that of a dangerous, desperate and lawless man. Upon the filing of this affidavit the attorney for the Commonwealth stated he would admit the affidavit in evidence subject to relevancy and competency, and the court thereupon overruled the motion for a continuance.

On the trial the defendant called for this affidavit in order to read the same to the jury as the evidence of the absent witnesses named therein; but after a search the clerk of the court failed to find the affidavit and notified the court same was lost or misplaced and could not be found, and it was not then produced, but must have been later found because it appears copied in this transcript. The court proceeded with the trial notwithstanding the absence of the affidavit, and this was done over defendant's objection and he is claiming he was deprived of the benefit of this evidence.

Without going into the question of the materiality of this evidence, or whether the same was or not merely cumulative, it appears sufficient to say it is not disclosed in the bill of exceptions that defendant asked time to prepare and present a substituted affidavit showing in substance the same as was shown in the original. No step of that nature, or of any kind whatever, was taken by him

to get the benefit of this evidence when it was disclosed the affidavit was lost, and it appears to us in the absence of some such action upon his part the court committed no error in proceeding with the trial.

The bill of exceptions discloses no affirmative act upon the part of appellant, or his counsel, to cure or correct the alleged misfortune brought about by the temporary loss of the affidavit.

(3)   The witness, West, was sheriff of Fulton county, and the trial the court had on appellant's motion relieved him from his official duties during the trial and had appointed in his stead a special bailiff.

It appears that during the trial the court permitted West to remain in the court room although he was an important witness for the Commonwealth, and to sit at the table with or near the attorney for the Commonwealth and advise and consult with him during the progress of the trial.  This is complained of as error against the substantial rights of appellant under the rules of practice laid down in section 601 of the Civil Code and section 151 of the Criminal Code.

The provisions of section 601, Civil Code, are that when either party requires it ''The judge may exclude from the court room any witness of the adverse party not at the time under examination, so that he may not hear the testimony of the other witnesses.''

The provision of section 151 of the Criminal Code is that ''The provisions of the Code of Practice in civil actions shall apply to and govern the summoning and coercing the attendance of witnesses and compelling them to testify in all prosecutions, criminal or penal actions or proceedings,'' with certain exceptions not here pertinent.

But these provisions of the Code have been often held to be only directory, and that it is within the sound judicial discretion of the trial court to permit one witness for the Commonwealth to remain in the court room to aid attorneys in the presentation of the evidence to be introduced.  Baker v. Commonwealth, 106 Ky. 212; Gilbert v. Commonwealth, 111 Ky. 796; Greer v. Commonwealth, 27 R. 334.

(4)   It is complained of instruction number one that it did not require the jury to believe beyond a reasonable doubt that the killing was done with malice aforethought, and, in a purely technical sense, this is true.  But the court did say in that instruction that defendant could be found guilty of wilful murder only if the shooting was

done with malice aforethought, and we think a fair and reasonable interpretation of the language of the instruction does not make it susceptible to the objection claimed, or that the jury could have so understood it. And especially is this true in the light of the subsequent instructions, practically in the language of the Code on the subject of reasonable doubt. Daniels v. Commonwealth, 181 Ky. 392; McGehee v. Commonwealth, 181 Ky. 422.

(5)   It is finally contended that the action of the attorney for the Commonwealth in his closing argument to the jury and certain statements then made by him were highly prejudicial to the substantial rights of the defendant. The bill of exceptions recites that in such argument the attorney for the Commonwealth walked to some of the jurors trying the case, and pointing his finger in the face of each of them said to each of them in a vicious and overbearing manner, "If you turn this man loose who is guilty of a bloody and damnable murder, I demand of you that after the trial you give me a reason for doing it, each of you."

An analysis of this language, whatever may have been the manner and bearing of the attorney at the time, fails to convince us there was in it, or that there could be fairly implied from it, any threat by the attorney either to do physical violence to any juror who failed to return a verdict of guilty, or that there would result to him any other consequence to his injury. In our analysis the language only means that "I will require of you if you turn this man loose that you give me your reason for doing so," and as we understand it carries with it no implication of any threat whatsoever.

There is no suggestion in the record that the attorney for the Commonwealth had any particular influence over any one of the jurors, or that he had it within his power to do any one of them an injury or visit upon him any dire consequences. It may be conceded it is improper for a prosecuting attorney to at any time during the progress of a trial show a vicious and overbearing manner; but it is the substance of the argument or statements made with which we are concerned, and not with the manner of making them.

We fail to see that this language could have had any damaging effect upon the defendant's rights, and especially in the light of the fact that the jury, believing him

guilty of wilful murder, gave him the lowest penalty for that crime.

We fail to perceive in the record any error prejudicial to the substantial rights of the appellant.

Judgment affirmed.