# Philpot v. Commonwealth.

(Decided January 13, 1931.)

BROCK & WALL and J. HENRY TAYLOR for appellant.

J. W. CAMMACK, Attorney General, and GEORGE H. MITCHELL, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE LOGAN—Affirming.

Tim Philpot, the appellant, was jointly indicted with his brother, Ed Philpot, Joe Stewart, and Arthur Jackson for the murder of Sam Farmer in Bell county early in January, 1928. They demanded separate trials, and the commonwealth elected to try the appellant. He

was convicted and his punishment fixed at life imprisonment.

In the mining camp of Carey there is a building, the lower floor of which is used for a barber shop and pool room. On Saturday night Sam Farmer, the man who was killed, with his stepson, Frank Ashburn, went to this room about 6 o'clock in the afternoon. Upon their arrival the appellant was in the room, and his codefendants were also there, as well as a number of other persons. Some were standing around the stove, others were playing pool while yet others were idling about. The appellant left the room within a few minutes after Farmer and Ashburn came in. Farmer had gone to the place to obtain a hair cut and shave. He did not immediately demand of the barber that the work be done. A blind man came in with a musical instrument and the crowd listened to the music for some time. When Farmer was ready to obtain the hair cut and shave he went to the barber chair in which Arthur Jackson was sitting, although it appears that the barber was not engaged in performing any work for him. He requested Jackson to get out of the chair, and at this Jackson took offense. The barber directed him to get out of the chair and probably some force was applied to remove him. He immediately drew his pistol from his pocket and about that time other pistols appeared in the hands of others, particularly in the hands of Joe Stewart, Ed Philpot and Arthur Jackson. Frank Ashburn also had a pistol in his possession which fell on the floor, and there were one or more pistols that were lying on the floor at the time. The evidence goes into some detail pointing out the character of pistols that each one had. They were many and of high class. Sam Farmer was unarmed, or at least he had no pistol. His stepson, Frank Ashburn, had obtained the pistol which he owned at the home of Sam Farmer without his knowledge. The armed truce continued for some time, probably as long as fifteen minutes. Jackson, however, was disarmed and removed from the room, but his pistol was restored to him, and he returned and took his position among the others who were standing ready for anything that might take place. There was little said. It was a sullen bunch of men standing armed in the room. Sam Farmer told Arthur Jackson that if he had offended him by requesting him to leave the barber chair he was sorry, and that he meant no offense. He said to the others thus assembled, "Boys let us have

peace." The excitement grew less, and it appeared that the pistols might again be placed in pockets, or scabbards, without harm to any one. Propositions were made by one or more that they would put up their pistols if the others would do likewise. Appellant was not present while these demonstrations and maneuvers were taking place.

To present a complete picture it is necessary to follow the acts of appellant. When he left the room soon after Farmer and Ashburn came in he walked on the railroad track, which passed near the building in front for a distance, and after leaving it he went to the home of some person where religious services were being conducted. He went in and remained there for some little time, when he received a message from the pool room that his brother was involved in a difficulty there. This information was brought to him by some party who had seen what was going on and had made his way from the scene of probable conflict. Appellant left the religious services and went near the room sheltering the armed men. He saw his brother and others in there with drawn pistols. It is made to appear that serious difficulties had taken place in the past between some of Farmer's folks on the one side and the Philpots on the other. He saw Frank Ashburn there with his pistol and saw, or thought he saw, Sam Farmer with a billiard cue. He did not go in, but he went to the home of a neighbor to obtain a shotgun. He was told that the shotgun was not there, but he knew where it was kept, and when he looked in the place he found it. He took possession of it and also took three shells needed for shooting the gun. He returned to the pool room.

There is no material conflict in the evidence until the events following the return of the appellant. There was a porch in front of the building not across the entire front, but about half way across. The building was about fifteen feet in length, and about twenty feet wide. The barber chair was on the right of the door going in, and the stove was on the left. The pool tables were further back. When appellant reached the porch in front of the building he met a man who had been in the room who suggested to him that he ought not to go in as the armed men were quieting down and everything was about over. He made no response to this. He approached the door with the gun in position to shoot. Frank Ashburn testified that he saw him approach the door, and at the

same time he saw Ed Philpot, Arthur Jackson, and Joe Stewart move from near the center of the room towards the left side, leaving Ashburn alone near the center of the room. When he looked towards appellant the gun was leveled at him and was fired immediately, the load finding a target in the breast of Ashburn. That appellant fired the shot gun at Ashburn when Ashburn was making no demonstration towards him, or any one else, is established by the evidence for the commonwealth. Many witnesses so testified. When Ashburn was struck by the shot in his bosom Ed Philpot, Joe Stewart, and Arthur Jackson turned loose a fusillade at him. He fell on the floor and was shot more than once while lying on the floor. Those who were in the room scattered, getting out as fast as possible, and through any opening available. For that reason many of them did not see the shooting of Sam Farmer. The evidence in the main is directed to the shooting of Ashburn, and the appellant is not on trial for that. Although seriously wounded, Ashburn recovered. The evidence for the commonwealth was to the effect that Sam Farmer was shot by appellant when he was making no demonstration, and when he had his hands up in front of him. This shooting took place about the door and soon after the shooting of Ashburn. Probably Farmer had passed out of the door onto the porch before he was shot. There was evidence to the effect that he was shot by appellant without any provocation whatever.

The appellant testified that he approached the building after he left the religious services and saw that his brother was in danger, and when he returned to the door with the shotgun Ashburn had his pistol drawn on Ed Philpot, and that his object in approaching the door was to protect his brother, but when he approached Ashburn saw him and immediately fired two shots at him, and he returned the fire. He and his witnesses testified that he fired no shot until Ashburn had fired at him twice. Immediately after this appellant testified that Sam Farmer came towards him with a billiard cue in one hand and a knife in the other, and when he saw that his life was endangered he fired at Farmer. He produced evidence in corroboration of his statement.

It will thus be seen that the jury, if it believed the evidence offered by the commonwealth, must find appellant guilty of murder, but, if it believed the evidence of appellant and his witnesses, he was entitled to an acquit-

tal on the ground of self-defense. The question of his guilt or innocense under the evidence was for the jury, as is always true in such cases. Nothing remains, therefore, but for this court to examine the grounds for reversal urged by counsel for appellant. The first of these grounds is that the court should have sustained a demurrer to the indictment. The indictment is in two counts. In the first count a conspiracy is charged, and the conspirators are named as the four defendants mentioned in the indictment, and appellant is mentioned as the conspirator who in furtherance of the conspiracy and while it existed shot and killed Farmer. The case was not presented by the commonwealth under the first count. The second count charges the four defendants with murder. All are charged as principals, and there is no effort in this count to charge any one as a principal and the others as aiders and abettors. Counsel for appellant say that the second count in the indictment is bad. No particular reason is given for their belief that it is bad other than its brevity. It is probable that counsel has in mind that there should have been separate counts charging each as principal and the others as aiders and abettors until all were charged as principals and as aiders and abettors. In the late case of Hogan v. Commonwealth, 230 Ky. 680, 20 S. W. (2d) 710, this court held that in a joint indictment for a felony either of the defendants may be convicted as principal, or as aider and abettor. That was a case where the charge was striking and wounding with a deadly weapon with the intent to kill. It was held in the case of Commonwealth v. Lawson, 165 Ky. 4, 170 S. W. 359, that an indictment which charged two persons with having maliciously wounded a person with the intent to kill him was not bad as charging more than one offense. In the case of McGehee v. Commonwealth, 181 Ky. 422, 205 S. W. 577, it was held that an indictment which jointly charged two persons with having committed murder was not bad on demurrer, and in support of that conclusion the case of Commonwealth v. Lawson, supra, was cited.

That an indictment may charge a conspiracy and then, in separate counts, charge that the offense was committed in some other way is settled by the opinion in the late case of Brannon v. Commonwealth, 215 Ky. 589, 286 S. W. 785, which is based on the opinion in the case of Anderson v. Commonwealth, 144 Ky. 215, 137 S. W. 1063.

The next complaint is that the motion for a continuance was overruled. Appellant filed a long affidavit in support of his motion for a continuance in which he stated what could be proved by absent witnesses. The facts which he said he could establish by the absent witnesses were proven by other witnesses, and the affidavit as to the evidence which the witnesses would give was allowed as evidence in the case. The witnesses had been subpoenaed, and their whereabouts were known before the trial, and there is nothing in connection with the motion for a continuance which impresses the court that appellant was, in any way, prejudiced by a refusal of the continuance. It is apparent from the whole record that appellant's theory of the case went to the jury supported by impressive evidence, and there is nothing in the affidavit for a continuance which would indicate that appellant could have made his case any stronger if he had obtained a continuance. The discretion of a trial judge in granting and refusing a continuance is one which will rarely be interferred with. There is nothing in the record bringing this case into the class of cases where the ends of justice will not be served by allowing the affidavit as to the testimony of witnesses to be read to the jury. The rule governing continuance in such cases is well defined in the case of Vick v. Commonwealth, 202 Ky. 845, 261 S. W. 616, and Fannin v. Commonwealth, 200 Ky. 635, 255 S. W. 514. The trial court did not abuse a sound discretion in refusing to grant a continuance.

There is serious complaint made about the admission of evidence and some controversy between counsel representing the respective sides as to whether proper objections and exceptions were interposed. The evidence complained about as incompetent was the transactions, maneuvers, and statements that took place in the pool room after appellant left and before his return. The point has a formidable look, but an examination of all the evidence shows that no right of the appellant could have been prejudiced by this evidence even if it should be admitted that it was incompetent. About all that it shows is that the parties gathered in the pool room, drew their pistols, and there was some conversation, but none of it related to the appellant, and there was nothing to indicate that any one knew that appellant had been, or would be, present There is nothing in that evidence which could have misled the jury to the prejudice of appellant. It may be that it was helpful to him, as his

theory of the case was that he came to the room the second time to protect his brother, and without this evidence there would have been nothing before the jury to show any danger to his brother. The evidence was a part of the whole transaction leading up to the killing. Appellant voluntarily entered into the existing conditions when he came to the room with the shotgun and thereby made himself a participant in what had gone before. The evidence was probably competent under the res gestae doctrine. Any transaction in a criminal case from the beginning of the difficulty until its termination ordinarily is a part of the res gestae. The evidence was not prejudicial, if incompetent, and it is unnecessary for us to go further than this in passing on the question.

The last complaint is aimed at the self-defense instruction. It was given in the usual form with that modification which is made necessary where the defendant began, or brought on the difficulty. After having covered the question of self-defense proper, the court appended this modification: ''But this instruction is subject to this modification, that if the jury believe from the evidence beyond a reasonable doubt that the defendant, Tim Philpot, began the difficulty in which said Sam Farmer was killed by assaulting and shooting at Frank Ashburn with a deadly weapon when it did not reasonably appear to him to be necessary to protect himself or his brother, Ed Philpot, from immediate danger of death or great bodily harm then about to be inflicted on him or on his brother, Ed Philpot, or which reasonably appeared to the defendant about to be inflicted on him or his brother, Ed Philpot, by said Frank Ashburn, then and in that event the jury cannot acquit the defendant upon the ground of self-defense or apparent necessity.'' That modification means that, if appellant brought on the difficulty by shooting at Frank Ashburn when he did not believe and had no reason to believe that he, or his brother, was in danger of death or great bodily harm at the hands of Ashburn, he cannot claim exculpation on the grounds of self-defense. His whole defense was that he shot to protect himself or his brother, and that his shooting resulted in the attack on him by Farmer. If what he claimed was true, and the jury believed from the evidence that it was true, he was not deprived of his right of self-defense by the instruction. On the other hand, if he brought on the difficulty by shooting Ashburn when there was no legal reason or justification for his so

doing, he, himself, brought about the danger which he afterward sought to avoid by shooting Farmer. An examination of the law is necessary.

In the case of Smith v. Commonwealth, 215 Ky. 815, 287 S. W. 8, it was held that, if the accused fires the first shot, or makes a demonstration to shoot the deceased when he is in no danger real or apparent, then an instruction qualifying the right of self-defense is proper. The instruction given in the case before us appears to conform to the opinion in that case. Other cases dealing with the question are Gibson v. Commonwealth, 214 Ky. 458, 283 S. W. 427; Yates v. Commonwealth, 204 Ky. 552, 265 S. W. 275; Mays v. Commonwealth, 200 Ky. 678, 255 S. W. 257; Collier v. Commonwealth, 160 Ky. 338, 169 S. W. 740.

In a carefully considered case, Watkins v. Commonwealth, 123 Ky. 817, 97 S. W. 740, 743, 29 Ky. Law Rep. 1273, Judge Settle, in writing for the court, directed the giving of an instruction in a case somewhat similar to this as follows: "But if the jury believe from the evidence, beyond a reasonable doubt, that the defendant, Green Watkins, Clay Watkins, Sam Watkins, or Elliott Collins, or any of them, when they met Lee Manns and his party, commenced the difficulty with them by first shooting at them, or any of them, or making the first demonstration to shoot at any of them, or that defendant, Clay Watkins, Sam Watkins, and Elliott Collins met the parties named, and both parties were armed and determined on a conflict, and did engage in such conflict by mutual consent, then in either event the defendant, Green Watkins, cannot rely on the right of self-defense, or that he acted in defense of his associates named."

Perceiving no error to the prejudice of the substantial rights of appellant, the judgment is affirmed.