## Deaton v. Commonwealth.

(Decided Dec. 9, 1932.)

A. FLOYD BYRD for appellant.
BAILEY P. WOOTTON, Attorney General, and H. HAMILTON RICE, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming

The appellant, John J. Deaton, has been convicted of the crime of manslaughter under an indictment charging him with murder, and sentenced to a term of 10 years in the penitentiary. He shot and killed John L. Morgan on May 22, 1930, at Barwick, a station on the Louisville & Nashville Railroad in Breathitt county, Ky.

Ill feeling between the members of the Morgan and Deaton families had existed for several months prior to the tragedy. Appellant's home was directly across the Kentucky river from Barwick, and the deceased lived about one-half mile from appellant. Brownlow Deaton, appellant's son, lived about midway between the homes of appellant and deceased, and was the constable in the magisterial district in which all the parties resided. Appellant was frequently referred to by his neighbors and acquaintances, particularly those who disliked him, as "Owl head." He considered this appellation or nickname derisive; and resented its use.

Young men and boys of the neighborhood would frequently conceal themselves in the woodlands on the mountainside opposite his home and imitate the calls of an owl, or, as described by the witnesses, "would hoot like hoot owls." He would become enraged on these occasions, and would shoot into the woodland whence the sounds emanated. During the afternoon on which the killing occurred, these calls and noises were heard coming from the mountainside just back of the railroad station at Barwick. On that day John L. Morgan and his two sons, Estill and Dennis, who were then 18 and 13 years old, respectively, were working in a cornfield near Morgan's home. Estill was plowing, and his father and younger brother were hoeing. Estill finished his part of the work about 4 o'clock, and announced that he was going to Barwick to meet the train which arrived shortly after 5 o'clock. Dennis also went to Barwick later.

Some time after 4 o'clock Brownlow Deaton was seen to enter the woodland from which the calls in imitation of the hooting of an owl had been coming, and shortly thereafter Estill Morgan and Clarence Stidham were seen walking down the railroad tracks from the mouth of the hollow which led to the woodland. Brownlow Deaton soon followed them and placed them under arrest. He called his father, who was at his home across the river, and requested him to bring some handcuffs. Appellant procured the handcuffs, also a .38 caliber pistol, which he placed in his pocket, and crossed the river to Barwick. The handcuffs were placed on the two boys, and there was some discussion about taking them to Jackson, the county seat, when some one suggested that John L. Morgan be sent for to execute bonds for them. Dennis Morgan went to his father's home and notified him that Estill had been arrested. The deceased left the cornfield in which he had been working and went to Barwick. He was in his shirt sleeves and unarmed. When he arrived, he asked Brownlow Deaton why he had arrested the boys, and Deaton replied that he had arrested them for "hooting". Morgan insisted that Deaton had no right to arrest them for "hooting," and an argument ensued, during which Morgan called Brownlow an owl-headed son of a bitch. Thereupon Brownlow drew his pistol and attempted to strike Morgan over the head. Morgan threw up his hands to ward off the blow, and the

pistol fell from Deaton's hand. They then clinched. Appellant was sitting on some railroad ties near by, and, according to some of the witnesses, as soon as the argument between his son and Morgan began, he drew his pistol and held it behind him, and, when they clinched, he started toward them with the pistol in his hand. Morgan saw him approaching, and attempted to keep Brownlow between himself and appellant to prevent appellant from shooting him. Appellant, as soon as an opportunity presented itself, fired two shots at Morgan, one striking him in the side and the other in the back. During the struggle between Brownlow and Morgan, the latter's 13 year old son picked up Brownlow's pistol and shot Brownlow, killing him almost instantly. Thereupon appellant began shooting at Dennis Morgan, and Dennis turned and fired several shots at appellant. Dennis was not wounded, although one bullet passed through his shirt. One bullet fired by Dennis struck appellant near the thigh and broke his leg. He was carried into the house of Ed Deaton, where he made the statement that he would die happy if he could kill Dennis and Estill Morgan.

There is little conflict in the evidence except as to who fired the first shot. The majority of the eyewitnesses testified that appellant fired twice at John L. Morgan before Dennis Morgan began firing, and appellant himself said he did not know who fired first, but he was of the opinion that he and Dennis fired almost simultaneously.

The following grounds are relied upon for a reversal of the judgment: (1) Admission of incompetent evidence; (2) newly discovered evidence; and (3) misconduct of the attorney for the commonwealth.

Two or three witnesses were asked the following question which they answered in the affirmative:

"Do you know whether or not the defendant, John J. Deaton, over there would' become enraged and if it made him mad to hear a noise like a hoot owl hollering?"

Several other witnesses testified that appellant always became angry when he heard such noises. It is argued that this evidence was incompetent and its admission prejudicial, but it tended to show appellant's state of mind and the motive actuating him at the time he shot

the deceased, and for that purpose it was admissible. The court so admonished the jury. One witness was asked if Brownlow Deaton had not made a good officer, and appellant was asked if he, at the time of the trial, could walk without crutches. Objections to both of these questions were sustained, and correctly so. Neither tended to elicit facts material to the question in issue.

After the trial, appellant filed the affidavits of James Deaton, Doug. White, and Robert White, alleged newly discovered witnesses. James Deaton stated in his affidavit that he heard the deceased a few months before he was killed threaten to kill appellant. Doug. White and Robert White stated in their joint affidavit that they were the sons of Henry White, and that they heard John May tell their father in their presence shortly after the killing that he knew nothing about it, but that he intended to do whatever was necessary to put appellant in the penitentiary. Henry White was introduced as a witness in appellant's behalf, and he testified to substantially the same facts set out in his sons' affidavit. John May had been introduced as a witness by the commonwealth, and testified that he was at appellant's home about eight days before the killing, and that appellant on that occasion threatened to kill John L. Morgan. The testimony of Doug. White and Robert White is not only cumulative, but is impeaching in its nature, and we have frequently held that a new trial will not be granted on account of newly discovered evidence, where it is either cumulative or impeaching in its nature, except under unusual circumstances which do not exist here. To warrant a new trial, the newly discovered evidence must be of such clear and convincing character as would probably lead to a different result on another trial. Jarvis v. Commonwealth, 240 Ky. 716, 43 S. W. (2d) 2; Ely v. Commonwealth, 239 Ky. 638, 40 S. W. (2d) 276; Reynolds v. Commonwealth, 238 Ky. 485, 38 S. W. (2d) 221; Shepherd v. Commonwealth, 230 Ky. 611, 20 S. W. (2d) 466; Williams v. Commonwealth, 230 Ky. 327, 19 S. W. (2d) 964; Carnes v. Commonwealth, 146 Ky. 425, 142 S. W. 723; Calico v. Commonwealth, 145 Ky. 641, 140 S. W. 1036. We do not consider the testimony of the newly discovered witness, James Deaton, of sufficient importance to warrant a new trial in view of the facts disclosed by the record.

372

The misconduct of the attorney for the commonwealth of which complaint is made consists of the following statements made by him during his closing argument to the jury: "If any one of the jury want to hang the jury and acquit the defendant, let the blood of John L. Morgan be on his hands." And, "Some one of the jury was a kin to the defendant and if they wanted to hang the jury to satisfy a gang that was sitting around to hang juries they would know who it was." While these statements, especially the second one, were improper, and the objections to them should have been sustained, we do not think the substantial rights of the appellant were prejudiced by the error. In view of the character of the evidence and the punishment fixed by the jury, we are satisfied that these statements of the attorney for the commonwealth were not considered by the jury in arriving at their verdict. Middleton v. Commonwealth, 204 Ky. 460, 264 S. W. 1041; Whitson v. Commonwealth, 197 Ky. 745, 247 S. W. 979.

Finding no error prejudicial to appellant's substantial rights, the judgment is affirmed.