## Collingsworth v. Commonwealth.

(Decided May 25, 1934.)

SWINFORD, SWINFORD & SIMS for appellant.

BAILEY P. WOOTTON, Attorney General, and DAVID C. WALLS, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY HOBSON, COMMISSIONER— Affirming.

Ben Collingsworth was indicted in the Pendleton circuit court for the murder of Ed Fisher. On the trial of the case he was found guilty of manslaughter and his punishment fixed at nine years imprisonment in the penitentiary. He appeals.

The first ground relied on for reversal is, that the verdict is not warranted by the evidence and that the court should have instructed the jury peremptorily to find the defendant not guilty. The facts shown by the proof are these: Collingsworth and Fisher lived in the same neighborhood. On October 14, 1933, Fisher went in his car to the home of Collingsworth and invited Collingsworth to ride with him. They had been friends and rode around for some time in the car. Collingsworth took his banjo along and played. Finally they went to a public house in Falmouth and stayed there until after 11 o'clock. They then went to a garage and Fisher had a new tire put on the car and bought some gasoline. They stayed around Falmouth until 2:15. During all this time they were drinking heavily. The next morning, about 6:30, Collingsworth appeared at the home of Lawrence Spalding, who lived about five miles from Falmouth and about six miles from where Collingsworth lived. Collingsworth looked like he had been drinking heavily and had been walking a long distance. He said he got lost the night before and made an arrangement with Spalding to take him home. After they got in the car, he told Spalding that he and his buddy got separated in the night and he did not know when it was. He said his buddy was Ed Fisher. He told Spalding that he did not want to go through the main part of the town of Falmouth; he did not want people to see him lost. So they went down a side street. After they got on the Bradford road, which was the road that Collingsworth and Fisher had started home on the night before, they saw on top of the hill a car sitting in the middle of the road. Collingsworth said, "That looks like Ed Fisher's car now." When they passed the car he said, "That is Ed Fisher's car, wonder where he is at." That was all that was said then and they went on to Collingsworth's home, which was a mile or two further. During this ride Collingsworth told Spalding that he and his buddy got held up the night before; that he got separated from his buddy and did not know where he was at; that they

were both drinking and that somebody held them up, or that he and Ed had a fight, that he could not remember. Spalding when he came back passed the car and stopped to see what had taken place there. He looked in the car; could not see where anybody had been fighting around there. A banjo was in the car. The switch key was still on. He then looked down in the ditch and saw Ed Fisher. He had been shot, the ball entering near the heart and coming out in the back. Spalding reported the facts to an officer. An officer went to the house of Ben Collingsworth to arrest him. When he drove up in the yard, Collingsworth was sitting in front and ran back in the house. When the officer got to the door, he was standing there with a shotgun in his hand, but he set it down at the command of the officer. The officer asked him who he was with the night before. He said he was out with Ed Fisher. He also asked him if he had had any trouble with him and he said no, and the officer said, "Don't you know that Ed Fisher was found dead this morning?" and he said "No." The officer took him in the car, placing him under arrest. When he got in the car, he broke down and went to crying, begging the officer to shoot him, to do anything he wanted to with him, said he would give a thousand dollars if he had not been out with Fisher. The officer took him on to the jail and the next day he was in the jail for another purpose and Collingsworth called him around to his cell and asked him if he was right in confessing the truth, and added: "I killed Ed, Ed made me do it. I had to kill him." The officer asked him what Ed did to make him kill him and he answered: "He come out of the car and grabbed at me and I shot him." The officer asked him how close he was to him and he said, "Right against him." The officer said, "Ben that wont do he was not that close; there were no powder burns on his shirt." Collingsworth then said, "Well he started to get out of the car, started to reach back in the car for something, grabbed for something and I started to run and shot him." The officer asked him if there were any rocks or weapons on the ground close to Ed and he said no. Collingsworth made similar statements to other people about this time. On the trial of the case Collingsworth stated in substance that the car stalled and he got out to push it to give it a start. He could not move it and Fisher cursed him and got out of the car and was advancing on him saying that he

would kill him. He retreated to the fence, and as Fisher was still advancing, he shot Fisher with his pistol.

Fisher had no arms on his person, except two ordinary pocket knives, which were shut up and in his pocket. No weapon was found at the scene of the difficulty and there was no proof that Fisher had any weapon.

The sum of the proof is that both of the men were drunk and that the homicide occurred on the roadside about 4 o'clock in the morning and was the act of the defendant. His statement that he had to kill Fisher was merely his conclusion. He had no right to kill Fisher; except in necessary self-defense, and this was a question for the jury. On all the facts the court therefore properly refused to instruct the jury peremptorily to find the defendant not guilty. Lucas v. Com., 231 Ky. 76, 21 S. W. (2d) 113.

The verdict of the jury is not against the evidence. The proof as a whole leaves no doubt that it was simply a drunken brawl in which Collingsworth killed his friend Fisher, and the facts shown failed to justify him on the ground of self-defense. Parrott v. Com., 221 Ky. 202, 298 S. W. 675; Handshoe v. Com., 245 Ky. 10, 53 S. W. (2d) 195. The defendant also complains that the court instructed the jury on murder, insisting that there was no evidence of malice shown, and that in any event the killing was done only in sudden heat and passion. But the jury did not find the defendant guilty of murder. He was found guilty only of manslaughter and it has been often held that in such a case the defendant is not prejudiced by the instruction on murder. See House v. Com., 251 Ky. 834, 65 S. W. (2d) 997, and cases cited.

Judgment affirmed.