# Williams v. Commonwealth.

(Decided April 23, 1935.)

ROY GARRISON and ROY HOLMAN for appellant.

BAILEY P. WOOTTON, Attorney General, and RAY L. MURPHY, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Reversing.

The appeal is by John Williams from a judgment of death for the murder of Charles Styers on September 27, 1934.

Mrs. Myrtle Hale testified that she and Styers, a married man whose wife was visiting in Chicago, drove into the country to eat a picnic supper about 7 o'clock. They went out the "Husband Road" and then turned off on what is called the "Lane Road." The automobile was stopped at the side of this old logging lane in a patch of weeds. In a few minutes the appellant approached, then went into the weeds, and presently arose and came to the car in which she and Styers were sitting. He drew a pistol and commanded, "Stick 'em up." Styers asked what he meant, and he responded, "This is a holdup; get out of that car." They did so, and Williams ordered the witness to walk up the road until he told her to stop and then to lie down on the ground. She ran a few yards and then into the weeds. She heard several shots fired back at the car. Styers had had a pistol in the pocket of the automobile. Both men were wounded. Styers fell in the road as he came toward her. She asked Williams to help take him to a doctor, but he responded, "Get in that car. I have been shot twice and one more murder won't hurt." He commanded her to keep on driving, saying he was going to die and repeating that "one more murder won't hurt." Near the home of her uncle she slowed down, intending to stop, but he put his pistol to her side and compelled her to keep on. Presently he laid the pistol in his lap and began examining the wound in his chest, and she grabbed the weapon and threw it out the window. He struck her and she ran the machine into the

ditch and screamed for help. This was some distance from the place of the shooting. There was quite a fight or tussle in the car between the witness and the defendant, during which, she testified, he kept on beating her. Soon he got out of the car and some men came up. While he was lying on the ground, he told them his name was Arthur Lane, but later said he was going to die and would tell the truth and that his name was John Williams and that he shot the man in a hold-up. The details of his statements are related somewhat differently by several witnesses, but they are not material.

The defendant testified he was a native of McMinnville, Tenn., but had no regular home. He was thirty-three years old, and appears to have been a wanderer. He was allowed to testify that his mother was insane when she died and he had several uncles and aunts who were insane; also that in 1930 at Johnson City, Tenn., he had been given a "sanity hearing," but was turned loose as being harmless. Concerning the tragedy, the defendant testified that while in Paducah on a previous occasion he had made the acquaintance of Myrtle Hale, and on the day before the homicide he met up with her on or near the railroad tracks. After a conversation, arrangements were made for him to meet her at 6 o'clock the next evening at the place where the killing occurred. She told him how to get out there, and he went solely for the purpose of meeting the woman. She got out of the car and was walking along the road when he came out from the side and met her. The man, whom he had not previously seen, walked up and became excited and pulled his pistol and started shooting and did shoot him. He was dazed and began firing. At one place in his testimony he stated when he saw Styers he was surprised, and that his pistol fell from his pocket and he caught it, and then Styers drew his weapon and shot him. As to his statements on the roadside about having killed the man in a hold-up, the defendant testified he did not know what he had said.

There were some other statements proven against the accused and denied by him. Mrs. Hale in rebuttal denied the defendant's story altogether and said she had never seen him before.

It is argued that the admission of evidence of the

fighting between the defendant and Mrs. Hale in the automobile after the killing, of her wounds in the face, of the result of the search of the body of the deceased, and of the defendant's declarations, was in each instance prejudicially erroneous as being proof of a different offense and as having no bearing upon the issue on trial since the homicide had already been completed. All of this evidence was competent as part of the res gestæ and because so interwoven with the principal crime as to constitute part of it; also the acts and declarations of the accused tended to establish his guilt of the crime charged. Gaines v. Commonwealth, 242 Ky. 237, 46 S. W. (2d) 75; Jarvis v. Commonwealth, 245 Ky. 790, 54 S. W. (2d) 307.

The first instruction was in the usual form as to finding the defendant guilty of murder. The second instruction was on voluntary manslaughter committed in sudden heat and passion, but the right to find the defendant guilty under this instruction was qualified by these conditions:

"If you shall not believe from the evidence beyond a reasonable doubt that the defendant has been proven guilty of murder, as defined in instruction No. 1, but shall believe from the evidence beyond a reasonable doubt, that at a time when defendant was not attempting to rob said Styers by pointing a pistol at said Styers, that the defendant did" shoot and kill in sudden affray, etc.

Instruction No. 3 gave the law of self-defense, and instruction No. 4 deprived the accused of that right if the jury believed beyond a reasonable doubt that he had willfully and feloniously brought on the danger to himself by making a demonstration to rob Styers and thereby created the danger to himself.

An isolated spot on an old lane, along a creek-side, some distance from a frequently traveled way, seems a peculiar place for a highway robber to be concealed. But likewise unusual is the story of the tryst with the woman so far from the city at a place to which the accused had to walk, and the additional fact that she came there with another man. Taking the defendant's testimony and reasonable inferences from all the circumstances, it seems to us a voluntary manslaughter instruction was authorized, although the defendant claimed he shot in self-defense, and the commonwealth

maintained he was guilty of murder. But it further appears that the qualification of the manslaughter instruction was prejudicially erroneous. According to the defendant, he made no attempt to rob Styers, but was present only for the purpose of meeting the woman and the fight followed. It is the duty of a court to give an instruction upon every phase of the homicide which has a substantial basis in the evidence, leaving to the jury to say which is true if conflicting theories are presented. The accused is entitled to have his theory of the case and every phase of it submitted by proper instructions without qualification. Shelton v. Commonwealth, 145 Ky. 543, 140 S. W. 670; Vaughn v. Commonwealth, 204 Ky. 229, 263 S. W. 752; King v. Commonwealth, 187 Ky. 782, 220 S. W. 755; Roberson's Kentucky Criminal Law, sec. 1874.

We are not aware of having approved a qualification of a voluntary manslaughter instruction where the homicide was committed while the accused was attempting to commit, or was committing, a felony, such as robbery, which tends to the injury of another, either immediately or by necessary consequences. Where the killing is under those circumstances, it is murder. Roberson's Ky. Cr. Law, sec. 357; 29 C. J. 1097; 30 C. J. 49; Wharton's Cr. Law, pp. 113, 548. The trial court had this in mind by limiting the manslaughter instruction, but that left the accused without any unqualified law; and, further, it is to be observed that by the terms of the instruction the burden was placed upon the defendant to establish beyond a reasonable doubt that he was not perpetrating a robbery, which was part of his defense, and hence erroneous. Jones v. Commonwealth, 213 Ky. 356, 281 S. W. 164; Feldman v. Commonwealth, 258 Ky. 277, 79 S. W. (2d) 960.

We think the better way to have presented this would be to have included in instruction No. 1, which was a murder instruction in the usual form, the idea that, if the jury believed from the evidence beyond a reasonable doubt that the defendant shot and killed Styers while attempting or intended to rob him by making a demonstration to do so by pointing a pistol at him or in any other forcible and violent manner, they should find him guilty of murder.

Where there is an error in an instruction relating to a higher degree of the crime charged than that of

which the defendant was convicted—as an error in a murder instruction and the conviction was of manslaughter—the error is harmless. Beach v. Commonwealth, 240 Ky. 763, 43 S. W. (2d) 6; Collingsworth v. Commonwealth, 254 Ky. 472, 71 S. W. (2d) 1030. And while ordinarily an error in an instruction relating to a lower degree of a homicide than that of which the defendant was convicted is likewise to be held not prejudicial (30 C. J. 447; Collier v. Commonwealth, 160 Ky. 338, 169 S. W. 740), it cannot be and is not always so. The facts and the nature of the error are controlling. People v. Durand, 313 Ill. 582, 145 N. E. 162. We cannot say that under the circumstances of this case the jury would not have found the defendant guilty of voluntary manslaughter had an unqualified and correct instruction on that phase of the case been given. See 30 C. J. 448; State v. Salgado, 38 Nev. 413, 150 P. 764; Washington v. State, 68 Tex. Cr. R. 589; 151 S. W. 818; State v. Brown, 207 N. C. 156, 176 S. E. 260.

For the reasons assigned, the judgment is reversed.

Whole court sitting.